UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JASON BOYCE,

          Plaintiff,

    v.

BRUCE WEBER and LITTLE BEAR, INC.,

      Defendants.

---

**CASE NO. 1:19-cv-03825-JMF**

 

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ........................................................................1

II.   STATEMENT OF FACTS ..............................................................................2

III.  LEGAL ARGUMENT......................................................................................6

   A. Legal Standard ..........................................................................................6

   B. Summary Judgment Should Be Denied as to Plaintiff's Employment Claims Because
      There Are Triable Issues of Material Fact ........................................................6

      1. Defendants' Argument that They Were Not Employers or Employment
         Agencies Should Be Deemed Waived ................................................7

      2. There Is Sufficient Evidence to Establish a *Prima Facie* Case of Sexual
         Harassment and Discrimination by an Employment Agency .............................8

         a. There Is Sufficient Evidence to Create A Triable Question of Fact as to
            Whether Plaintiff Applied for Defendants' Services as Employment
            Agencies .................................................................................8

         b. There Is Sufficient Evidence to Create a Triable Question of Fact as to
            Whether Defendants Discriminated Against Plaintiff as Employment
            Agencies .................................................................................10

            i.  There Is Sufficient Evidence that Weber Discriminated Against
                Boyce in Acting Upon His Application for Defendants' Services
                and in Referring Boyce to Prospective Employers .......................10

            ii. There Is Sufficient Evidence that Weber Sexually Harassed
                Plaintiff While Acting Upon His Application for Defendants'
                Services and in Referring Him to Employers ..............................11

      3. There Is Sufficient Evidence to Establish a *Prima Facie* Case of Sexual
         Harassment and Discrimination by Potential Employer ....................................12

         a. There Is Sufficient Evidence to Create a Triable Question of Fact as to
            Whether Defendants Were Potential Employers as to Plaintiff..............12

            i.  Little Bear and Weber Are Employers.................................12

            ii. Boyce Applied for Work with Little Bear and Weber ..........13

i

b. There is Sufficient Evidence to Create a Triable Question of Fact as to Whether Defendants Discriminated Against Plaintiff as Prospective Employer ............................................................................................. 14

i. Plaintiff Has Established a *Prima Facie* Case of Discriminatory Failure to Hire .............................................. 14

A. Plaintiff Applied for Employment Using Defendants' Informal Application Process ............ 15

B. There Is Sufficient Evidence that Plaintiff Was Qualified for a Job as a Model .............................. 17

C. There Is Sufficient Evidence for the Jury to Make an Inference of Invidious Discrimination ............. 18

ii. Plaintiff Has Established a *Prima Facie* Case of Quid Pro Quo Sexual Harassment ....................................... 19

iii. Plaintiff Has Established a *Prima Facie* Case of Gender Discrimination Under the NYCHRL ................................... 20

4. There Is Sufficient Evidence to Establish a *Prima Facie* Case of Aiding and Abetting Sexual Harassment and Discrimination ............................... 20

5. Little Bear Is Liable for Weber's Misconduct Under the NYSHRL and NYCHRL .......................................................................... 22

D. Summary Judgment Should Be Denied as to Plaintiff's Sex Trafficking Claim Because There is Sufficient Evidence to Establish That Weber Enticed and Recruited Plaintiff ....................................................................................... 22

IV.   CONCLUSION .......................................................................................... 25

## **TABLE OF AUTHORITIES**

Cases                                                                                                          Page(s)

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986)...................................................................................................6

*Aguirre v. Best Care Agency, Inc.,*
    961 F. Supp. 2d 427 (E.D.N.Y. 2013) ...........................................................24

*Ardolf v. Weber,*
    332 F.R.D. 467 (S.D.N.Y. 2019) ...............................................................23, 24

*Bright v. Coca Cola Refreshments USA, Inc.,*
    No. 12 Civ. 234 (BMC), 2014 WL 5587349 (E.D.N.Y. Nov. 3, 2014) ...........................17

*Brown v. Coach Stores, Inc.,*
    163 F.3d 706 (2d Cir. 1998)...........................................................................15

*Canosa v. Ziff,*
    No. 18 Civ. 4115 (PAE), 2019 WL 498865 (S.D.N.Y. Jan. 28, 2019)...........................23

*Chau v. Donovan,*
    357 F. Supp. 3d 276 (S.D.N.Y. 2019).......................................................13, 20

*Cronin v. Aetna Life Ins. Co.,*
    46 F.3d 196 (2d Cir.1995)...........................................................................15

*Falu v. County of Orange,*
    No. 16 Civ. 48 (NSR), 2017 WL 2889513 (S.D.N.Y. June 30, 2017) .............................18

*Farzan v. Wells Fargo Bank, N.A.,*
    12 Civ. 1217 (RJS) (JLC), 2013 WL 6231615 (S.D.N.Y. Dec. 2, 2013) ....................6, 17

*Father Belle Cmty. Ctr. v. New York State Div. of Human Rights on Complaint of King*,
    221 A.D.2d 44 (1996) .................................................................................19

*Feingold v. New York,*
    366 F.3d 138 (2d Cir. 2004)...........................................................................13

*Garrigan v. Ruby Tuesday, Inc.,*
    14 Civ. 155 (LGS), 2014 WL 2134613 (S.D.N.Y. May 22, 2014) ................................22

*Graham v. Long Island R.R.,*
    230 F.3d 34 (2d Cir. 2000)...........................................................................18

*Griffin v. Sirva, Inc.*,
  29 N.Y.3d 174 (2017) ..................................................................................................20

*Harte v. Woods Hole Oceanographic Institute*,
  495 F. App'x. 171 (2d Cir. 2012) ...................................................................................8

*Henson v. Dundee*,
  682 F.3d 897 (11th Cir. 1982) .....................................................................................11

*Holland v. Edwards*,
  282 A.D. 353 (1st Dept. 1953) ....................................................................................10

*Holtz v. Rockefeller & Co., Inc.*,
  258 F.3d 62 (2d Cir. 2001) ..........................................................................................18

*Howley v. Town of Stratford*,
  217 F.3d 141 (2d Cir. 2000) ..........................................................................................6

*Hughes v. Twenty-First Cent. Fox, Inc.*,
  304 F. Supp. 3d 429 (S.D.N.Y. 2018) ...................................................................15, 20

*Johnson v. Cnty. of Nassau*,
  82 F. Supp. 3d 533 (E.D.N.Y. 2015) ...........................................................................21

*Karibian v. Columbia University*,
  14 F.3d 773 (2d. Cir. 1994) .........................................................................................19

*Kinnison v. Adv. Stores Co., Inc.*,
  No. 02CA73, 2003 WL 21473490 (Ohio Ct. App. 2003) ...........................................19

*Langhorne v. Port Authority of New York*,
  No. 03 Civ. 4610, 2005 WL 3018265 (S.D.N.Y. Nov. 10, 2005) .................................9

*Margerum v. City of Buffalo*,
  24 N.Y.3d 721 (2015) ....................................................................................................7

*Matter of Secor v. City of New York*,
  13 Misc. 3d 1220(A), 2006 WL 2918060 (N.Y. Sup. Ct. 2006) ...................................8

*Mauro v. S. New England Telecomms., Inc.*,
  208 F.3d 384 (2d Cir. 2000) ........................................................................................16

*Meritor Sav. Bank, FSB v. Vinson*,
  477 U.S. 57 (1986) .......................................................................................................11

*Mihalik v. Credit Agricole Cheuvreux North America, Inc.,*
715 F.3d 102 (2d Cir. 2013)............................................................................20

*Moore v. Pennsylvania Dept. of Military and Veterans Affairs,*
216 F. Supp. 2d 446 (E.D. Pa. 2002) ..............................................................19

*Murphy v. ERA United Realty,*
251 A.D.2d 469 (2d Dep't 1998) .....................................................................21

*Murtha v. New York State Gaming Comm'n.,*
17 Civ.10040 (NSR), 2019 WL 4450687 (S.D.N.Y. Sept. 17, 2019) ..............21

*National Org. for Women v. State Div. of Human Rights,*
34 N.Y.2d 416 (1974) ................................................................................20, 21

*New York City Commission on Human Rights v. Boll,*
1974 WL 2796 (1974)..................................................................................9, 11

*New York State Div. of Human Rights v. ABS Elecs., Inc.,*
102 A.D.3d 967 (2d Dep't. 2013) ....................................................................22

*Noble v. Weinstein,*
335 F. Supp. 3d 504 (S.D.N.Y. 2018).......................................22, 23, 24, 25

*Patrowich v. Chemical Bank,*
63 N.Y.2d 541 (1984) ......................................................................................12

*Petrosino v. Bell Atlantic,*
385 F.3d 210 (2d Cir. 2004).............................................................................15

*Scaglione v. Chappaqua Cent. School Dist.,*
209 F. Supp. 2d 311 (SDNY 2002)..................................................................13

*Shuvalova v. Cunningham,*
Case. No. C 10-02159, 2010 WL 5387770 (N.D. Cal. Dec. 22, 2010) ...........24

*Sibley Memorial Hospital v. Wilson,*
488 F.2d 1338 (D.C. Cir. 1973)........................................................................13

*Sorlucco v. New York City Police Dep't,*
888 F.2d 4 (2d Cir. 1989).................................................................................18

*Tolbert v. Queens College,*
242 F.3d 58 (2d Cir. 2001).................................................................................8

*Tomka v. Seiler Corp.*,
    66 F.3d 1295 (2d Cir. 1995)........................................................................21

*Tutor Time Learning Centers, LLC v. GKO Group, Inc.*,
    13 Civ. 2980 (JMF), 2013 WL 5637676 (S.D.N.Y. Oct. 15, 2013) ...................................8

*United States v. Marcus*,
    628 F.3d 36 (2d Cir. 2010)........................................................................24

*United States v. Todd*,
    627 F.3d 329 (9th Cir. 2010) ....................................................................24

*Vivenzio v. City of Syracuse*,
    611 F.3d 98 (2d Cir. 2010)........................................................................14

*Wang v. Phoenix Satellite TV US, Inc.*,
    976 F. Supp. 2d 527 (S.D.N.Y. 2013)........................................................7, 17

*Whitley v. Bowden*,
    17 Civ. 3564 (KMK), 2018 WL 2170313 (S.D.N.Y. May 10, 2018)..................................7

*Wilborn v. S. Union State Community College*,
    720 F. Supp. 2d 1274 (M.D. Ala. 2010) ......................................................11

*Williams v. New York City Dept. of Educ.*,
    No. 19 Civ. 1353 (CM), 2019 WL 4393546 (S.D.N.Y. Aug. 28, 2019) ........................11

*Williams v. R.H. Donnelley, Corp.*,
    368 F.3d 123 (2d Cir. 2004)..................................................................15, 16

Statutes
Title 18 U.S.C. § 1590 .............................................................................24, 25
Title 18 U.S.C. § 1591 .............................................................................22, 25
New York Administrative Code § 8-102 ..........................................................8
New York Administrative Code §8-107 .............................................8, 9, 12, 22
New York Executive Law § 296...............................................................*passim*
New York Executive Law § 300..........................................................................7
New York Executive Law § 292...........................................................8, 12 13

Other Authorities
Fed. R. Civ. P. 56(a) .......................................................................................6

Plaintiff Jason Boyce ("Plaintiff" or "Boyce"), through counsel, files this memorandum of law in opposition to Defendants Bruce Weber ("Weber") and Little Bear, Inc.'s ("Little Bear") (collectively, "Defendants") Motion for Summary Judgment dismissing the complaint.

## I. PRELIMINARY STATEMENT

All of Defendants' arguments in support of their Motion for Summary Judgment depend on the Court accepting Defendants' readily-disputable, evidence-contested, and self-serving version of the facts in this case. Defendants' contend that the photoshoot where Bruce Weber molested Jason Boyce was neither employment-related nor initiated by Weber, but rather a "portrait session" done as a favor by Weber for Boyce's agent. This contention is disputed by the evidence, and is at best a question of fact for the jury. As such, Defendants' motion fails.

There is sufficient evidence that Boyce's photoshoot with Weber was a "go-see," which is a version of a job interview for models (also called a "test shoot"). Go-sees are part of the informal process Defendants use to decide which models to invite to specific castings or to hire for Weber's projects. Therefore, Boyce's photoshoot with Weber was a crucial step in the application process for any job with Defendants and the brands for which Weber photographed. Accordingly, there is sufficient evidence that Boyce applied for employment with Defendants and third-party brands, making Defendants liable as prospective employers and employment agencies under the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL").

As for the sex trafficking claim under the Trafficking Victims Protection Act ("TVPA"), a jury could reasonably conclude that Weber enticed and recruited Boyce by setting up the go-see. Whether Weber was just luring him to the studio without any intention of hiring him, Weber's invitation enticed and recruited Boyce. Weber also enticed Boyce by telling him he was beautiful

1

and asking how ambitious he was, implying that submitting to the molestation would be good for Boyce's career, and by pretending to help him take better photographs at the go-see.

Although Defendants go to great lengths to emphasize that the go-see was a "favor" – of which there is absolutely *no* corroborating evidence other than Defendants' self-serving testimony – this contention does not entitle Defendants to judgment as a matter of law.  An invitation to a job interview, even if extended as a favor, is still an invitation to a job interview.  That the interviewer has ulterior motives or does not take the applicant seriously does not give him the right to molest the applicant, and does not exempt him from the law if he chooses to do so.

For these reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion for Summary Judgment.

## II. STATEMENT OF FACTS

Weber is one of the most influential and well-regarded photographers in the world, with the power to make a model's career.   (Plaintiff's Counterstatement of Facts in Response to Defendants' Rule 56.1 Statement, "Pl.'s Counter Facts," 1-3.)  Little Bear is a production company that derives all of its incomes from producing and supporting Weber's work.  (*Id.*, 65.)  Clients, including magazines that publish editorials and brands that launch advertising campaigns, hire Weber to shoot editorials and campaigns and Little Bear to produce them.  (*Id.*, 14.)

Defendants oversee the casting process for hiring models for campaigns and editorials. (*Id.*, 15.)  Clients ask Defendants to identify models who fit the project, and then Defendants send casting invitations to modeling agencies for specific models.  (*Id.*, 16.)  Castings are not open to the public or publicly posted.  (*Id.*)  Defendants also hold general castings, so that they are prepared with models to refer or hire when projects arise.  (*Id.*, 18.)  After castings, Little Bear's casting department sorts through the applicants first and then sends the applicants' photographs to Weber,

2

who refers his selections to the client. (*Id.*, 19-20.) The client then chooses which models to hire from the selection of models that Little Bear cultivated and Weber edited. (*Id.*, 20.)

Weber receives a "barrage" of text messages and emails from agents about their models, who are all trying to get jobs with Defendants, as part of the models' informal application process to Weber's projects. (*Id.*, 21.) Weber occasionally responds by inviting the model to a go-see (an informal one-on-one casting). (*Id.*, 8, 22.) Models occasionally get job offers as a result of a go-see with Weber. (*Id.*, 8, 37.) Defendants occasionally also respond to agents' applications by inviting the model to a specific casting, inviting the model to a general casting, offering to find a project for the model, putting the model on hold for a job, or hiring the model. (*See id.*, 16, 21, 30-31, 36-37, 39.) Weber regularly represented to both models and their agents that he could cast models in campaigns and editorials. (*Id.*, 27-34.)

In addition to managing the castings, Defendants control the actual production for campaigns and editorials. (*Id.*, 40.) They distribute a "welcome packet" which outlines the schedule and rules for models. (*Id.*, 41-42.) At the actual photoshoot, Weber is in charge. (*Id.*, 43.) He has the authority to cut models and decide which photographs (of which models) to send to the client for potential use in the editorial or campaign. (*Id.*, 45-46.) Defendants also pay the agencies directly for the models' work. (*Id.* 46.)

Weber has a practice of attempting to sexually assault male models during photoshoots through his fraudulent photography practices and "breathing exercise." (*Id.*, 48-60.) During the "breathing exercise," he rubs the models and/or directs them to rub themselves wherever they "feel the energy"; this could include their forehead, chest, and stomach. Guiding their hands, he tries to force his hand and theirs down to their genitals, or his own. (*Id.*) Agents knew about Weber's problematic "breathing exercises," and models would warn each other about getting "Brucified."

(*Id.*, 76-77.)  Unfortunately, Little Bear has no specific sexual harassment training and does not train its employees on how to not sexually harass models, nor advise models of any avenues to complain about harassment.  (*Id.*, 68-69.)  Little Bear knew that Weber regularly met with models alone, however they never asked him what he did when he was alone with them.  (*Id.*, 75.)  Despite the notoriety of Weber's "breathing exercises," not one Little Bear employee claims to have ever heard about Weber's conducting breathing exercises before the instant lawsuit.  (*Id.*, 79.)

As an aspiring model, Boyce enjoyed some success in the modeling industry, but he wanted to meet with Weber because he believed it would help his modeling career.  (*Id.*, 81-82.)  Both his California agent, David Todd, and his New York agent, Jason Kanner, sent photographs of Boyce to Weber to help him get a job with Defendants.  (*Id.*, 87.)  In March of 2013, Todd texted a nude photograph of Boyce to Weber, as agents often did to show him that the model was not "shy."  (*Id.*, 23, 88.)  Weber responded in three minutes, "Where is he from and when can I see him?" (*Id.*, 88.)  Todd called Boyce to arrange a meeting with Weber, but Boyce was unavailable that day because he was shooting a commercial.  (*Id.*, 89.)  In February of 2014, Todd texted Weber another photograph of Boyce, to which Weber responded, "Very handsome!" "What's the personality like?" "Where is he from" "Where does he live now?"  (*Id.*, 90.)  In November of 2014, Kanner emailed photos of Boyce to Weber, to which Weber responded, "Hey Jason he is really handsome in an old school way- maybe I can meet him in NYC when I come back to the city in December- or if he is in Miami- where is he from[?]"  (*Id.*, 92.)  On November 24, 2014, Kanner told Boyce that Weber had agreed to a go-see with him, which took place on December 12, 2014, at a jewelry store in midtown.  (*Id.*, 93.)  At the jewelry store meeting, Weber complimented Boyce and said he wanted to photograph him.  (*Id.*, 97.)  Weber told Boyce that he would set up a shoot through Kanner, who later told Boyce that he had arranged a test shoot with Weber.  (*Id.*, 98, 100.)

4

Boyce attended the test shoot/go-see (Little Bear says they are the same thing) with Weber on December 15, 2014 at Little Bear.  (*Id.* 9, 105.)  At the go-see, Weber photographed Boyce alone, with the studio door closed.  (*Id.*, 106.)  Weber told Boyce he would be more relaxed after some "breathing exercises." (*Id.*, 108.)  Weber asked Boyce to remove his shirt, pants, and shoes, and then to pull his underwear up or down.  (*Id.*, 109-111.)  Boyce kept pulling his underwear up and down, but avoided pulling his underwear too far as to expose himself.  (*Id.*, 111.)  After several rounds of Boyce pulling his underwear up and down, Weber approached Boyce and pushed his hands down over his underwear until they fell to Boyce's ankles.  (*Id.*, 112.)  Weber took more photographs of Boyce, then came up close and told him to put his hands on himself or Weber where Boyce felt the "energy." (*Id.*, 113.)  Weber then grabbed Boyce's wrist and pushed his hand down until Boyce was touching his own genitals.  (*Id.*, 114.)  Weber told Boyce that if he "could just have confidence that [he] would really go far," and asked Boyce how ambitious he was.  (*Id.*, 115.)  Weber then began moving Boyce's hand back and forth over Boyce's genitals, and moved Boyce's hand to Weber's own genitals.  (*Id.*, 116-117.)  After the "breathing exercise," which continued in the same manner, Weber abruptly told Boyce they were "done" and to put his clothes back on.  (*Id.,* 118-119.)  When Boyce had his pants on, Weber called Boyce over to him, got very close, stared at him, and told him he was beautiful.  (*Id*., 119.)  Weber told Boyce to close his eyes, and then he put his fingers in Boyce's mouth, and kissed him.  (*Id.*, 120.)  Boyce pulled back, Weber again told him they were "done," and Boyce left.  (*Id.*)

As part of Weber's "breathing exercise" with female models, Weber does not guide the female model's hand to her genitals, does not kiss the female model on the mouth, and does not put his fingers in the female model's mouth.  (*Id*., 61-63.)

On April 13, 2015, Kanner again emailed some photographs of Boyce to Weber, and wrote:

"YOU MET HIM AND LOVED..DO YOU REMEMBER...DO YOU HAVE TIME TLO [sic] MEET HIM THIS WEEK?"  (*Id.*, 121.)  Weber forwarded Kanner's email to Little Bear's casting department, who invited Boyce to a casting on April 17, 2015.  (*Id.*, 122-126.)   Boyce was not hired.  (*Id.*)  Weber sent the December go-se photographs to Kanner on April 24, 2015.  (*Id.*, 104.)

## III. LEGAL ARGUMENT

### A. LEGAL STANDARD

Summary judgment is warranted when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In determining whether that burden has been met, the court must to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought.  *See, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). "It is not the province of the court itself to decide what inferences should be drawn ...; if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper ...."  *Howley v. Town of Stratford,* 217 F.3d 141, 151 (2d Cir. 2000).  The Second Circuit has warned that courts "'must be especially cautious' when weighing summary judgment in discrimination cases, given the rarity of an employer leaving clear and direct evidence of its discriminatory intent in the record."  *Farzan v. Wells Fargo Bank, N.A.*, 12-cv- 1217 (RJS) (JLC), 2013 WL 6231615, at *12 (S.D.N.Y. Dec. 2, 2013), *subsequently aff'd sub nom. Farzan v. Genesis 10*, 619 F. App'x. 15 (2d Cir. 2015) (unpublished) (internal citations omitted).

### B. SUMMARY JUDGMENT SHOULD BE DENIED AS TO PLAINTIFF'S EMPLOYMENT CLAIMS BECAUSE THERE ARE TRIABLE ISSUES OF MATERIAL FACT

In discussing Plaintiff's employment claims, Plaintiff cites to Title VII cases as instructive, because the standards of recovery under the New York Human Rights Law "are in nearly all

6

instances identical to Title VII and other federal law." *Margerum v. City of Buffalo,* 24 N.Y.3d 721, 731 (2015) (internal citations omitted). However, in 2019, the NYSHRL was amended to direct courts to construe the NYSHRL liberally for the accomplishment of the "remedial" purposes thereof, "regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of [the NYSHRL], have been so construed." New York Exec. Law § 300. Therefore, Title VII should not be applied to the NYSHRL where it is not construed liberally. Additionally, under the Restoration Act of 2005, courts must interpret the NYCHRL independently from the NYSHRL, which represents a "a floor below which the City's Human Rights law cannot fall." *Wang v. Phoenix Satellite TV US, Inc.*, 976 F. Supp. 2d 527, 539 (S.D.N.Y. 2013) (internal citations omitted). "Therefore, claims found sufficient under the NYSHRL necessarily must survive under the NYCHRL." *Id.* Below, Plaintiff explains why summary judgment should be denied as to his "floor level" NYSHRL claims, which arguments necessarily apply to his NYCHRL claims. Where specifically stated, Plaintiff also notes where summary judgment should be denied as to his NYCHRL claims on an independent basis.

### 1.     Defendants' Argument that They Were Not Employers or Employment Agencies Should Be Deemed Waived

Defendants perfunctorily argue that neither Weber nor Little Bear acted as an employment agency or potential employer as to Boyce. (Defs.' Mot. for Summary Judgment ("Defs.' Mot.") at p. 14-15.) Similarly, in *Whitley v. Bowden*, 17 Civ. 3564 (KMK), 2018 WL 2170313, at \*12 (S.D.N.Y. May 10, 2018), the defendants "ma[d]e no actual arguments" other than citing "generic caselaw establishing the qualified immunity standard and apply[ing] it to this case in a single sentence…." The district court deemed the undeveloped argument waived. *Id.* Here, because Defendants likewise fail to present any developed argument, Plaintiff respectfully requests that the argument that Defendants were neither employment agencies nor employers be deemed waived by

the Court. *Id.; see also Harte v. Woods Hole Oceanographic Institute,* 495 F. App'x. 171, 173 n.1 (2d Cir. 2012); *Tolbert v. Queens College,* 242 F.3d 58, 75 (2d Cir. 2001) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."); *Tutor Time Learning Centers, LLC v. GKO Group, Inc.*, 13 Civ. 2980 (JMF), 2013 WL 5637676, at *1 (S.D.N.Y. Oct. 15, 2013).

### 2.       There Is Sufficient Evidence to Establish a *Prima Facie* Case of Sexual Harassment and Discrimination by an Employment Agency

It shall be an unlawful discriminatory practice for an employment agency to discriminate against any individual because of sex in receiving, classifying, disposing or otherwise acting upon applications for its services or in referring an applicant or applicants to an employer or employers. New York Exec. Law § 296(1)(b); *see also* New York Admin. Code § 8-107(1)(b).

### a.       *There Is Sufficient Evidence to Create a Triable Question of Fact as to Whether Plaintiff Applied for Defendants' Services as Employment Agencies*

The term "employment agency" "includes any person undertaking to procure employees or opportunities to work"; "person" includes one or more individuals or corporations.  New York Exec. Law § 292(1,) (2); New York Admin. Code § 8-102.  Whether a person is an "employment agency" is a question of fact.  *Matter of Secor v. City of New York*, 13 Misc. 3d 1220(A), 2006 WL 2918060 at *3 (N.Y. Sup. Ct. 2006) (internal citations omitted).

Defendants do not dispute that they are employment agencies, but rather they argue that that they did not act as employment agencies as to Plaintiff, because the portrait session was a favor "not for a specific job." (Defs.' Mot. at p. 14.)  Based on the statutory definition, there is sufficient evidence that both Defendants are employment agencies because they undertake to procure models to work on specific projects, and undertake to procure opportunities for specific models to work.  (*See* Pl.'s Counter Facts 15-20, 28-33, 39.)  Similarly, the court in *Secor* held that

a modeling agency conducting interviews for modeling positions was an employment agency. 2006 WL 2918060 at *2 (noting that "it is function, rather than form or licensure which determines whether the statutory definition has been met").

Defendants cite no authority for their proposition that Plaintiff must have applied for a "specific job" in order for Defendants to be considered employment agencies.  There is no such rule, and for good reason – agencies may not discriminate against applicants "*for its services,*" not job applicants.   New York Exec. Law § 296(1)(b); New York Admin. Code §8-107(1)(b) (emphasis added).  In *New York City Commission on Human Rights v. Boll*, 1974 WL 2796, at *1 (1974), a volunteer unpaid "counselor" of the Harvard Business School Club conducted meetings for male graduates on techniques of interviewing, made available a collection of job leads, and generally counseled attendees how to proceed in their job searches.  When a female Harvard-Radcliffe graduate attended a weekly meeting, she was "denied permission to remain, allegedly because she was a woman." *Id.*  The trial court upheld the administrative judge's holding that the counselor liable to the female graduate as an employment agency under the NYCHRL, even though he refused to accept her application for his services, and even though she never had the opportunity to apply to one of his "job leads." *Id.* at 2.  Similarly, in this case, Boyce applied for Defendants' services as an employment agency by attending a go-see with Weber at Little Bear. (Pl.'s Counter Facts 87, 93.)  The purpose of the go-see was to see if Weber liked Boyce and would hire or refer him for a job, even though Boyce did not at the time apply to a specific job.  (*Id.*, 101.)

For the same reason, the facts in *Langhorne v. Port Authority of New York*, No. 03 Civ. 4610, 2005 WL 3018265 (S.D.N.Y. Nov. 10, 2005), cited by Defendants, are distinguishable from Boyce's case.  In *Langhorne*, the plaintiff never applied to the defendant employment agency *for its services* – it just so happened that his temporary supervisor was an employee of an employment

agency.  *Id.* at \*2, 6.  In this case, there are sufficient facts to support a reasonable inference that Plaintiff sought Defendants' services as employment agencies.

> **b.**     **There Is Sufficient Evidence to Create a Triable Question of Fact as to Whether Defendants Discriminated Against Plaintiff as Employment Agencies**
>
> > **i.**     There Is Sufficient Evidence that Weber Discriminated Against Boyce in Acting Upon His Application for Defendants' Services and in Referring Boyce to Prospective Employers

The language in New York Executive Law section 296 must be construed liberally "for the accomplishment of the purposes thereof," which is to discourage discrimination in employment processes.  *Holland v. Edwards*, 282 A.D. 353, 358 (1st Dept. 1953).  In *Holland*, the court found that an employment agency's questions about names and name changes, "taken together," constituted discrimination as to creed and national origin.  *Id.* at 355-356.  The court did not conduct an analysis as to whether the applicant was otherwise qualified for work or whether the employment agency was motivated by discriminatory animus.  *Id.*

Here, the jury can reasonably make an inference that Weber discriminated against Boyce on the basis of his sex, a protected characteristic.  Weber conducted intrusive breathing exercises with Boyce, which he does not do in the same way with female models.  (Pl.'s Counter Fact 61.) Weber forced Boyce to rub his genitals, put his finger in Boyce's mouth, and kissed him on the mouth.  (*Id.*, 114-120.)  Weber does not force female models to endure the same breathing exercises.  (*Id.,* 62-63.)  The record also supports an inference that by asking Boyce how "ambitious" he was, as Weber held his hand over his genitals, Weber was linking Boyce's career prospects to his willingness to let Weber continue molesting him.  (*Id.*, 114-116.)  Therefore, a jury can reasonably conclude that Weber discriminated against Boyce on the basis of sex in referring him to other employers.

> ii.     *There Is Sufficient Evidence that Weber Sexually Harassed Plaintiff*
> *While Acting Upon His Application for Defendants' Services and in*
> *Referring Him to Employers*

Sexual harassment is a form of discrimination.  *Williams v. New York City Dept. of Educ.*,
No. 19 Civ. 1353 (CM), 2019 WL 4393546, at *9 (S.D.N.Y. Aug. 28, 2019).  Just as employment
agencies may not discriminate by refusing to refer applicants on the basis of sex (*see Boll*, 1974
WL 2796), they may not discriminate by sexually harassing applicants.  The Supreme Court has
cautioned against "a requirement that a man or woman run a gauntlet of sexual abuse in return for
the privilege of being allowed to work and make a living…"  *Meritor Sav. Bank, FSB v. Vinson*,
477 U.S. 57, 67 (1986) (citing *Henson v. Dundee,* 682 F.2d 897, 902 (11th Cir. 1982)).  In holding
that Title VII authorizes sexual harassment claims against employment agencies, a district court
in Alabama explained:

> [I]f any employment agency cannot refuse to refer on the basis of
> sex, it certainly cannot demand sexual favors as a prerequisite for a
> referral.  Furthermore, the court finds it unreasonable to assume that
> Congress intended that a prospective employee must endure a
> sexually "hostile environment" in order to obtain employment,
> when the same conditions would give rise to a cause of action in a
> place of employment.  The Eleventh Circuit Court of Appeals has
> cautioned against "a requirement that a man or woman run a gauntlet
> of sexual abuse in return for the privilege of being allowed to work
> and make a living."  This court will not assume that Congress
> nonetheless intended to allow that the same gauntlet be run in return
> for the privilege of being referred to employment.

*Wilborn v. S. Union State Community College*, 720 F. Supp. 2d 1274, 1293 (M.D. Ala. 2010)
(citing *Henson*, 682 F.2d at 902).  A "hostile environment" includes "unwelcome sexual advances,
requests for sexual favors, and other verbal or physical conduct of a sexual nature" where such
conduct creates an intimidating, hostile, or offensive work environment.  *Meritor,* 447 U.S. at 65.

Here, there is evidence that Weber made unwelcome sexual advances on Boyce during the
go-see.  (Pl.'s Counter Facts 112, 114, 116-117, 120.)  Although Boyce initially tried to resist, he

acquiesced because he wanted a referral to one of Weber's projects.  (*Id.,* 115) ("I didn't know – you know, on one hand, I'm thinking, you know, I can't physically assault this guy.  You know, on the other hand, if I – if I reject him or don't let him do what he wants to do, then, you know, he's not going to work with me, you know, again.").  As explained above, the jury could reasonably infer that Weber was seeking sexual favors as a prerequisite for a referral by linking Boyce's career prospects to his willingness to let Weber continue molesting him.  (*See* Section III.B.2.b.i.)  Therefore, there is a triable question of fact as to whether Weber sexually harassed Boyce as an employment agency.

### 3.     There Is Sufficient Evidence to Establish a Prima Facie Case of Sexual Harassment and Discrimination by Potential Employer

It shall be an unlawful discriminatory practice for an employer, because of an individual's sex, "to refuse to hire or employ or to bar" such individual.  New York Exec. Law § 296(1)(a); *see also* New York Admin. Law § 8-107(1)(a).

#### a.     There Is Sufficient Evidence to Create a Triable Question of Fact as to Whether Defendants Were Potential Employers as to Plaintiff

##### i.     Little Bear and Weber Are Employers

The term "employer" under the NYSHRL in 2014 "does not include any employer with fewer than four persons in his or her employ…"  New York Exec. Law § 292(5).  Individual employees are "employers" if they are "shown to have any ownership interest or any power to do more than carry out personnel decisions made by others."  *Patrowich v. Chemical Bank*, 63 N.Y.2d 541, 542 (1984).  Defendants do not dispute that they are employers, but rather they argue that that they did not act as prospective employers as to Plaintiff, because the portrait session was a favor "not for a specific job."  (Defs.' Mot. at p. 14.)

Based on the statutory definition, there is sufficient evidence that both Defendants are employers because Little Bear is a corporation with eight employees, and Weber is the "boss," the

"top of the top," with the authority to decide who to invite to castings and to overrule the casting department. (Pl.'s Counter Facts 17, 20, 64, 66-67.) A supervisor is also an "employer" for purposes of establishing liability under the NYSHRL if that supervisor "actually participates in the conduct giving rise to [the] discrimination." *Feingold v. New York*, 366 F.3d 138, 157 (2d Cir. 2004); *see also Chau v. Donovan*, 357 F. Supp. 3d 276, 292 (S.D.N.Y. 2019).

Moreover, "a Title VII defendant need not be the plaintiff's employer to interfere impermissibly with plaintiff's employment opportunities." *Scaglione v. Chappaqua Cent. School Dist.*, 209 F. Supp. 2d 311, 318 (S.D.N.Y. 2002) (internal quotations omitted). The Second Circuit follows the landmark District of Columbia Circuit case *Sibley Memorial Hospital v. Wilson,* 488 F.2d 1338, 1342 (D.C. Cir. 1973), which stands for the proposition "that Title VII prohibits a defendant's interference 'with an individual's employment opportunities with *another employer.*'" *Scaglione*, 209 F. Supp. 2d at 318. "To permit a covered employer to exploit circumstances peculiarly affording it the capability of discriminatorily interfering with an individual's employment opportunities with another employer, while it could not do so with respect to employment in its own service, would be to condone continued use of the very criteria for employment that Congress has prohibited." *Id.* at 318-319 (quoting *Sibley,* 488 F.2d at 1341).

Here, there is sufficient evidence that Defendants "exploit[ed] circumstances peculiarly affording [them] the capability of discriminatorily interfering with" Boyce's employment opportunities with other employers, by implicitly requesting sexual favors in return to access to castings for Weber's projects. (*See* Section III.B.2.b.i.)

### ii.    *Boyce Applied for Work with Little Bear and Weber*

Throughout his career, Weber held himself out (including to Plaintiff's agent) as being able to get models work and help with their careers. (*See* Pl.'s Counter Facts 27-34); *see also Chau,*

13

357 F. Supp. 3d at 285 (holding that the "Principal and Chief Compliance Officer" who held himself out as having "supervisory responsibilities, powers in support of hiring, firing, and salary decisions, and power to do more than carry out personnel decisions made by others" was an employer as to an applicant under the NYSHRL). Photographers, including Weber, hired models as a result of a go-sees. (Pl.'s Counter Fact 37.) The jury can therefore reasonably infer that Boyce, who wanted to work with Weber, went to the go-see for the purposes of securing employment with Defendants. (Pl.'s Counter Facts 100-101) (the go-see, or "test shoot," was an interview with Weber).

There is no evidence, other than Defendants' self-serving testimony, that the photoshoot was either a "portrait session" or a "favor" to Plaintiff's agent. There is no evidence in the written communications between Kanner and Weber regarding Boyce that Kanner ever asked for a favor or a "portrait session" for Boyce. (*See* Brown Decl., Ex. Q.) On the contrary, Kanner claims that Boyce "had repeatedly expressed his interest in *working* with Mr. Weber." (Pl.'s Counter Fact 101.) Plaintiff also testified that Kanner told him the shoot was a "test shoot," and even Defendants refer to the shoot as a "go-see" in their verified discovery responses. (*Id.*, 97, 101.)

> **b.** **_There Is Sufficient Evidence to Create a Triable Question of Fact as to Whether Defendants Discriminated Against Plaintiff as Prospective Employer_**
>
> > **i.** *Plaintiff Has Established a Prima Facie Case of Discriminatory Failure to Hire*

"[A] plaintiff complaining of a discriminatory failure to hire must first make out a prima facie case of discrimination by showing that (1) he is a member of a protected class, (2) he was qualified for the job for which he applied, (3) he was denied the job, and (4) the denial occurred under circumstances that give rise to an inference of invidious discrimination." *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010) (internal citations omitted). "Once the plaintiff has

made such a prima facie showing, the burden shifts to the employer to come forward with a nondiscriminatory reason for the decision not to hire the plaintiff." *Id.* If the employer articulates a reason, the plaintiff then has the "opportunity to adduce admissible evidence that would be sufficient to permit a rational finder of fact to infer that the employer's proffered reason is pretext for an impermissible motivation." *Id.* (internal quotations omitted.) To avoid summary judgment in an employment discrimination case, "the plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the 'motivating' factors." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir.1995).

> A.    Plaintiff Applied for Employment Using Defendants' Informal Application Process

Generally, one element of a failure to hire claim is that a plaintiff allege that she applied for a specific position and was rejected. *Brown v. Coach Stores,* Inc., 163 F.3d 706, 710 (2d Cir. 1998). However, the Second Circuit has established exceptions to the general rule, such as when "[the defendant] refused to accept individuals for positions or hand-picked individuals for promotion to a position without considering applicants." *Id.* In addition, a formal application is not required when "(1) the vacancy at issue was not posted, and (2) the employee either had (a) no knowledge of the vacancy before it was filled or (b) attempted to apply for it through informal procedures endorsed by the employer." *Petrosino v. Bell Atlantic,* 385 F.3d 210, 227 (2d Cir. 2004) (citing *Brown*, 163 F.3d at 710 n.2). Defendants cannot avoid failure-to-hire liability by selecting models based on informal, unscheduled processes. *Hughes v. Twenty-First Cent. Fox, Inc.*, 304 F. Supp. 3d 429, 446 (S.D.N.Y. 2018).

In *Williams v. R.H. Donnelley, Corp.,* 368 F.3d 123, 124 (2d Cir. 2004), the plaintiff brought a Title VII claim against her former employer for failure to promote. The Second Circuit

found that the plaintiff satisfied the "application requirement" for a District Sales Manager II ("DSM II") position even though she did not apply to the DSM II position, because she had expressed an interest in a promotion to that level.  *Id.* at 129 ("[I]f an employee expresses to the employer an interest in promotion to a particular class of positions, that general expression of interest may satisfy the requirement that the employee apply for the position") (citing *Mauro v. S. New England Telecomms., Inc.,* 208 F.3d 384, 387 (2d Cir.2000)).  In *Mauro*, the plaintiff sued his former employer for failure to promote.  208 F.3d at 385-86.  The plaintiff expressed interest to his employer in "Level Two" jobs, however when two such jobs opened up they were filled by younger individuals without being posted.  The Second Circuit found that "the record here could allow a jury to conclude that [the defendant] knew of [the plaintiff's] interest in being promoted to a Level Two job but nonetheless failed to make him aware of any promotion opportunities to those positions as they arose."  *Id.* at 387.  "In such a situation, requiring the plaintiff to show that he or she applied for the specific jobs at issue would be unrealistic, as an employee by definition cannot apply for a job that he or she does not know exists."  *Id.*

Here, similarly, Defendants do not publicly post jobs.  (Pl.'s Counter Fact 16.)  Rather, there is an informal process to securing work as a model with Defendants, including agents' sending pictures of models to Defendants who would then occasionally respond by: inviting the model to a go-see, inviting the model to a specific casting, inviting the model to a general casting, offering to find a project for the model, putting the model on hold for a job, or hiring the model for job.  (*See id.*, 21-22, 30-31, 36-37, 39.).  A jury could reasonably infer that Defendants knew of Boyce's interest in securing a modeling position with them, based on the communications from his agents, and therefore find that Boyce applied using Defendants' informal process.  (*Id.*, 87.)  Indeed, Boyce secured an invitation to a casting in April of 2015 because Kanner was able to

remind Weber that he "loved" Boyce after his go-see and asked if he could meet with him again; Weber added Boyce to the casting. (*Id.,* 121-124.)  There is evidence that suggests the casting was for Ralph Lauren (*Id.* 126.); regardless, the record permits an inference that Boyce applied for a job as a model without applying directly for a specific job. *See Wang,* 976 F.Supp.2d at 537-538 (finding that although the plaintiff did not apply for a specific position "[a]t all times, [the plaintiff's] actions indicate interest for a single class of position, that of a full-time reporter.").

*Farzan,* 2013 WL 6231615, at *24, cited by Defendants, is inapplicable to the facts here. In *Farzan,* the plaintiff conceded that he did not apply to any of the vacancies at issue, which were posted online. *Id.* at *23.  In this case, there a question of fact as to whether Defendants' modeling jobs are posted publicly. (Pl.'s Counter Fact 16.)  Defendants also cite *Bright v. Coca Cola Refreshments USA, Inc.*, No. 12 Civ. 234 (BMC), 2014 WL 5587349, at *27 (E.D.N.Y. Nov. 3, 2014), *aff'd sub nom. Bright v. Coca-Cola Refreshments USA, Inc.*, 639 F. App'x 6 (2d Cir. 2015) (summary order), which is also inapposite.  In *Bright*, the plaintiff "was 'humiliated and dejected' by his previous denials of promotion and thus did not apply for the position." *Id.*  Here, there is evidence that Plaintiff made repeated attempts to apply for work with Defendants – indeed, Defendants admit that instead of giving up, Plaintiff's "pursuit" of modeling employment with Weber was "relentless and continued year after year" (Defs.' Fact 19) and instead of being dejected, he continued to believe in himself as a model (Defs.' Fact 22).

        B.     There Is Sufficient Evidence that Plaintiff Was Qualified
               for a Job as a Model

Defendants have not argued that Plaintiff was not qualified for a job as a model, nor have they put forth any qualifying criteria that he did not meet.  Moreover, there is sufficient evidence that Boyce was qualified to model for Defendants:

- Boyce enjoyed some success as a model (Pl.'s Counter Fact 82);

- David Todd (Boyce's agent and Weber's longtime friend and business connection) believed Weber would want to work with Boyce (Pl.'s Counter Fact 85);
- Weber responded positively to Boyce's photographs (Pl.'s Counter Fact 88);
- Weber asked to meet Boyce (Pl.'s Counter Fact 89); and
- Weber told Jason Kanner that Boyce was "really handsome in an old school way – maybe I can meet him") (Pl.'s Counter Fact 92).

Ultimately, this is a question of fact for the jury, who can observe Boyce's modeling photographs firsthand.  (*See, e.g.,* Brown Decl., Ex. J.)

                C.     There Is Sufficient Evidence for the Jury to Make an Inference of Invidious Discrimination

With regard to the "inference of discrimination" prong of the failure-to-hire test, the Second Circuit has held that an inference of discrimination may be drawn either from "(1) direct evidence of discriminatory intent, or (2) a showing by the Plaintiff that 'she was subject to disparate treatment compared to persons similarly situated to herself.'" *Falu v. County of Orange*, No. 16 Civ. 448 (NSR), 2017 WL 2889513, at *6 (S.D.N.Y. June 30, 2017) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)).  Here, the record permits an inference that Weber intended to discriminate against Boyce.  As explained in Section III.B.2.b.i above, Weber discriminated against Boyce on the basis of his sex by molesting him during breathing exercises, which he does not do to female models.  (*See* Pl.'s Counter Facts 61-63, 114-116.)  Boyce's testimony as to Weber's discriminatory conduct is sufficient to raise a triable question of fact.  *See Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 78 (2d Cir. 2001) (citing *Sorlucco v. New York City Police Dep't,* 888 F.2d 4, 7 (2d Cir. 1989) ("The plaintiff may preclude summary judgment by producing evidence from which the trier of fact reasonably could draw an inference of discrimination.")).

Moreover, there is evidence that Weber invited Boyce to a Ralph Lauren casting on April 17, 2015.  (*See* Pl.'s Counter Facts 123-124.)  Weber did not refer him to Ralph Lauren.  (*Id.*, 126.)

18

He did, however, send Kanner the go-see photographs from December 2014, on April 24, 2015. (*Id.*, 104.)  The jury could reasonably infer that Weber found the go-see photographs around the time of the casting, remembered that Boyce pulled away when Weber tried to kiss him, and decided not to refer him for employment or offer feedback on his application.

> ii.     *Plaintiff Has Established a Prima Facie Case of Quid Pro Quo Sexual Harassment*

"[T]o establish a prima facie case of quid pro quo harassment, a plaintiff must present evidence that she was subjected to unwelcome sexual conduct, and that her reaction to that conduct was then used as the basis for decisions affecting the compensation, terms, conditions or privileges of her employment." *Karibian v. Columbia University,* 14 F.3d 773, 777 (2d. Cir. 1994).  At issue is whether the employer "has expressly or tacitly linked tangible job benefits to the acceptance or rejection of sexual advances; a *quid pro quo* claim is made out whether the employee rejects the advances and suffers the consequences or submits to the advances in order to avoid those consequences."  *Father Belle Community Ctr.v. New York State Div. of Human Rights on Complaint of King*, 221 A.D.2d 44, 50 (1996).  Some jurisdictions have held that under Title VII, a job applicant can assert a claim for quid pro quo sexual harassment; the NYSHRL and NYCHRL should be even more liberally construed.  *See Kinnison v. Adv. Stores Co., Inc.*, No. 02-CA-73, 2003 WL 21473490, at *3 (Ohio Ct. App. 2003) (holding that there is no requirement that an individual be an employee at the time of the alleged sexual demands in order to bring a quid pro quo sexual harassment claim) (citing *Moore v. Pennsylvania Dept. of Military and Veterans Affairs,* 216 F. Supp. 2d 446 (E.D. Pa. 2002)).

In this case, there is evidence of "sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature" in the form of Weber's forcing Boyce to rub his genitals, putting his finger in Boyce's mouth, and kissing Boyce on the mouth.  (Pl.'s Counter

Facts 114-120.)   That Weber asked him how "ambitious" he was and how "far" he wanted to go while Weber was molesting him permits an inference that Weber was expressly linking tangible job benefits to Boyce's acceptance or rejection of sexual advances.  (*Id.*, 115) (*see also* Section III.B.2.b.i., above).

### iii.   Plaintiff Has Established a Prima Facie Case of Gender Discrimination Under the NYCHRL

Even if Weber's conduct is not actionable under federal or state law, the Court "must consider separately whether it is actionable under the broader New York City standards." *Mihalik v. Credit Agricole Cheuvreux North America, Inc.,* 715 F.3d 102, 109 (2d Cir. 2013).  Under the more liberal NYCHRL, "[t]o establish a gender discrimination claim under the NYCHRL, the plaintiff need only demonstrate 'by a preponderance of the evidence that she has been treated less well than other employees because of her gender.'"  *Id.* at 110 (internal citations omitted).  The protections of NYCHRL extend to job applicants. *See Hughes*, 304 F. Supp. 3d at 445; *Chau,* 357 F. Supp. 3d at 292.

As explained in Section in Section III.B.2.b.i, above, the jury can reasonably infer that Weber treated Boyce less well than female models because of his sex.

### 4.   There Is Sufficient Evidence to Establish a Prima Facie Case of Aiding and Abetting Sexual Harassment and Discrimination

Defendants cite no authority for their argument that Plaintiff's claims for aiding and abetting discrimination should be dismissed if his other employment based claims fail.  (Defs.' Mot. at p. 15.)  On the contrary, a recent New York Court of Appeals case noted that caselaw does *not* consider primary discrimination when assessing liability for aiding and abetting.  *Griffin v. Sirva, Inc.*, 29 N.Y.3d 174, 188 (2017) ("Notably, the Court in *NOW* did not consider the issue of whether, separate from the [defendant], any employer or prospective employer was liable for

primary discrimination under the Human Rights Law") (citing *National Org. for Women v State Div. of Human Rights ["NOW"]*, 34 N.Y.2d 416 (1974)).

Defendants also argue that Weber and Little Bear cannot be aiders or abettors of their own alleged actions. (Defs.' Mot. at p. 15.) However, "[t]here is a disagreement among district courts in this Circuit over whether an individual can be held liable for aiding and abetting his own conduct giving rise to a claim under the NYSHRL." *Murtha v. New York State Gaming Comm'n.*, 17 Civ. 10040 (NSR), 2019 WL 4450687, at \*18 (S.D.N.Y. Sept. 17, 2019). For example, in *Johnson v. Cnty. of Nassau*, 82 F. Supp. 3d 533 (E.D.N.Y. 2015), the court held that a plaintiff who brings a claim under the NYSHRL based on his employer's having encouraged condoned, or approved the discriminatory conduct of a sole employee, may rely on the same discriminatory conduct to prove, "perhaps circularly," individual liability under the aiding and abetting provision of the NYSHRL. *Id.* "[S]ince each of the employees' actions imposed liability on their employer, the employees aided and abetted the employer's violation of the NYSHRL." *Id.* (citing *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1310 (2d Cir. 1995)); *see also Murphy v. ERA United Realty*, 251 A.D.2d 469, 674 (2d Dep't 1998) ("It is the employer's participation in the discriminatory practice which serves as the predicate for the imposition of liability on others for aiding and abetting.").

Here, there is sufficient evidence that Little Bear and Weber acted in concert and thus respectively aided and abetted Weber's misconduct and Little Bear's condonation of the same. A jury can reasonably infer that Little Bear, because it derives all its income from Weber's work, deliberately turned a blind eye to Weber's solo photoshoots. (*See* Pl.'s Counter Facts 65, 75.) Little Bear never asked Weber what he did with models when they were alone, never trained him or their staff regarding sexual harassment of models, and never provided models with an avenue to complain about Weber's conduct. (*Id.*, 68-69, 75.) Suspiciously, they relied on modeling agents

to protect models, but "don't want to know" what the agents "tell kids to do, or not to do."  (*Id.*, 70-71.)  Little Bear buried their head so deeply in the sand – or is being so deceptive about what they did or did not know – that they claim not to even have known about Weber's famous breathing exercises, which he claims to have been conducting for decades.  (*Id.*, 73, 79.)

5.    **Little Bear Is Liable for Weber's Misconduct Under the NYSHRL and NYCHRL**

Under the NYSHRL, an employer can be held liable for an employee's discriminatory acts if the employee "knew or should have known of the improper conduct" and "encouraged, approved, or condoned" it.  *New York State Div. of Human Rights v. ABS Elecs., Inc.*, 102 A.D.3d 967, 969 (2d Dept. 2013) (internal citations omitted).  As explained above in Section III.B.4, above, a jury could reasonably infer that Little Bear knew or should have known that Weber was molesting models and engaging them in a quid pro quo, but nevertheless condoned his conduct. The NYCHRL, on the other hand, "imposes strict liability on employers for discriminatory acts of managerial employees."  *Garrigan v. Ruby Tuesday, Inc.,* 14-cv-155 (LGS), 2014 WL 2134613, at *6 (S.D.N.Y. May 22, 2014) (citing New York Admin. Code § 8-107(13)(b)).  As explained above in Section III.B.3.b.ii, above, a jury could reasonably infer that Weber was a "managerial employee."

**C. SUMMARY JUDGMENT SHOULD BE DENIED AS TO PLAINTIFF'S SEX TRAFFICKING CLAIM BECAUSE THERE IS SUFFICIENT EVIDENCE TO ESTABLISH THAT WEBER ENTICED AND RECRUITED PLAINTIFF**

The verbs "entice" and "recruit" are not defined in the TVPA, and thus should be construed "in accord with [their] ordinary or natural meaning."  18 U.S.C. § 1591; *Noble v. Weinstein*, 335 F. Supp. 3d 504, 517, 517 n.6 (S.D.N.Y. 2018) (internal citations omitted).  The ordinary or natural meaning of "entice" is "to attract artfully or adroitly or by arousing hope or desire," as defined by the Merriam-Webster and Oxford dictionaries.  *Noble*, 335 F. Supp. 3d at 517.  The ordinary

meaning of "recruit" is to "persuade to do or help with something," according to the Merriam-Weber and Oxford dictionaries. *Id.* at 517 n.6 (internal citations omitted). In *Noble*, the court found that the plaintiff was enticed and recruited by defendant Harvey Weinstein's "assurances that 'everything will be taken care of for you if you relax,' including as he forced her to masturbate him." *Id.* at 517 n.6, 518. The court also found that Weinstein had "enticed" the plaintiff by promising her an audition for an unspecified film role and a meeting with a modeling agency. *Id.* at 517. In *Canosa v. Ziff,* No. 18 Civ. 4115 (PAE), 2019 WL 498865, at *2-3 (S.D.N.Y. Jan. 28, 2019)*, the court found that Weinstein had "enticed and recruited" the plaintiff by showing interest in a film idea she pitched to him, by promising to make her a part of the film's production team, and by inviting her to meet with him "ostensibly to discuss a television series…."

Here, there is sufficient evidence for the jury to find that Weber enticed Boyce by arranging to meet with him at the jewelry store, by showing interest in him as a model, by promising to set up a photoshoot, and by inviting him to a go-see at Little Bear. (Pl.'s Counter Facts 92-93, 97-98); *see also Ardolf v. Weber*, 332 F.R.D. 467, 474 (S.D.N.Y. 2019) ("[A[n] invitation to a photoshoot with Defendant was the ultimate opportunity and carried enormous value for aspiring models. Given this context, Plaintiffs plausibly alleged that, because they were aspiring models, Defendant's photoshoot invitations and opportunities *aroused* in them a *hope* and *desire* for success in their modeling careers."). A jury can also reasonably infer that Weber's statements during the go-see photoshoot, including telling Plaintiff that he was "beautiful" and could go "far" if he only had "confidence," enticed Plaintiff. (Pl.'s Counter Facts 110, 115.) Moreover, a jury could also reasonably infer that by approaching Boyce mid-photoshoot under the guise of offering creative direction and conducting a "breathing exercise," Weber enticed and persuaded Boyce to permit the ensuing sexual touching. (*Id.*, 110-114.) Finally, because Weber "secured [Plaintiff's]

services" as a model by inviting him to a go-see photoshoot, there is a question of fact as to whether Weber "recruited" Boyce.  (*Id.*, 92-93, 97-98.); *see Ardolf*, 332 F.R.D. at 474.

Defendants' argument that Plaintiff engaged in a "campaign to entice Weber" is not well taken – by their logic, any applicant applying for a job "entices" the employer.  Moreover, it is a question of fact for the jury whether Plaintiff's handful of applications to work with Weber over the years constitutes a "campaign to entice Weber."  Finally, Weber testified that at the time he invited Boyce to a go-see, he did not even remember Boyce's prior photographs and applications for his services.  (Pl.'s Counter Fact 95.)  Regardless, the pertinent question of fact is whether Weber ever successfully enticed or recruited Boyce, not the nature of their relationship.  *See United States v. Marcus*, 628 F.3d 36, 45, 2010 WL 4941993 (2d Cir. 2010) (the fact that the defendant's interaction with woman whom he forced to work eight to nine hours a day maintaining his bondage and sado-masochistic website may have begun as consensual sado-masochistic relationship did not remove defendant's conduct from the scope of forced labor statute); *United States v. Todd,* 627 F.3d 329, 331-332 (9th Cir. 2010) (cited by the courts in both *Noble* and *Ardolf*) (the facts that the sex-trafficking victim (1) dated the defendant before he trafficked her and (2) left him and voluntarily returned after he trafficked her, did not remove the defendant's conduct from the scope of the sex-trafficking statute).

Weber's reliance on trial court cases from other districts finding insufficient enticement or recruitment are unavailing.  *See Aguirre v. Best Care Agency, Inc.*, 961 F. Supp. 2d 427 (E.D.N.Y. 2013) (denying the plaintiff's motion for summary judgment because a fact issue existed as to whether she was recruited or harbored by the defendant); *Shuvalova v. Cunningham*, No. C 10-02159, 2010 WL 5387770 (N.D. Cal. Dec. 22, 2010).  Both cases involve purported trafficking with respect to involuntary servitude and forced labor (18 U.S.C. § 1590) rather than sex trafficking

(18 U.S.C. § 1591).  The respective statutes differ in significant ways.  Under Section 1590, trafficking involves "recruit[ing]…*any person for labor or services.*"  (Emphasis added.)  Section 1591, on the other hand, does not require recruitment or enticement for any specific purpose or to any particular event.  18 U.S.C. § 1591 (a)(1).  Although Defendants repeatedly deny that Weber "recruited or enticed Plaintiff to the portrait session," all Plaintiff has to show here is that Weber "recruited or enticed" him.  *See also Noble,* 335 F. Supp. 3d at 518 (holding that the plaintiff was "entice[d] *to engage in a sex act*" by the defendant) (emphasis added).  Here, there is sufficient evidence for a jury to reasonably infer that Weber enticed Boyce to engage in a sex act: Before pushing Boyce's hand to Weber's genitals, Boyce testified that "*he asked me how ambitious I was,* and he said, you know, things like if I could just have confidence that *I would go really far*."  (Pl.'s Counter Facts 115-17) (emphasis added).  Based upon Weber's assurances to Boyce just before he forced Boyce's hand on to his genitals, there is convincing evidence that Weber knowingly enticed Boyce to engage in a sex act in exchange for professional success.  (*Id.*)

## IV. CONCLUSION

Defendants have failed to meet their burden that there are no triable issues of material fact. For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion for Summary Judgment.

DATED: March 12, 2020                          Respectfully submitted,
                                               **THE BLOOM FIRM**

                                               By: /s/ Arick Fudali
                                               Arick Fudali
                                               Anna Levine-Gronningsater
                                               Sarah Bloom
                                               Attorneys for Plaintiff JASON BOYCE