UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JASON BOYCE,

        Plaintiff,

  v.

BRUCE WEBER and LITTLE BEAR, INC.,

        Defendants

Case No.  1:19-cv-03825-JMF

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

TABLE OF CONTENTS

Page

I. NO DISPUTED ISSUE OF MATERIAL FACT ON EMPLOYMENT CLAIMS….………1

    A. Weber's Testimony About The Purpose Of The Shoot Is Unrebutted…….............2

        1. The Opposition Papers Confirm No Disputed Material Fact………...………..2

        2. Boyce's Testimony On His Beliefs And Hopes Do Not Raise
           A Material Issue of Fact…...……...……...……...……...……...……..………..2

        3. Boyce's Assumption That A "Go-See" Cannot Be a Favor Shoot Is
           Contradicted By The Evidence……………………………………….……...4

        4. Boyce's Arguments From Documents Are Rank Speculation…….......................5

    B. No Disputed Material Fact Boyce Did Not Apply For A Job Or Referral Services…..6

    C. Boyce's Opposition Papers Show An Alarming Level of Conjecture……………6

II. NO DISPUTED ISSUE OF MATERIAL FACTS ON SEX TRAFFICKING CLAIM….7

III. CONCLUSION………………………………………………………………..10

## TABLE OF AUTHORITIES

**Cases**   Page(s)

*Alvarado v. Manhattan Worker Career Ctr.*
01-civ-9288-(CBM), 2002 WL 31760208, *10 (S.D.N.Y. Dec. 10, 2002)……………………..5

*Ardolf v. Weber*
332 F.R.D. 467 (S.D.N.Y 2019)…………………………………………………………………..8

*Bryant v. Adecco Employment Services, Inc.*
01-civ-0051-(HGM/GJD), 2006 WL 2827692, *2 (N.D.N.Y Sep. 30, 2006)…………..6

*Chen v. DG & S NY, Inc.*
406 F.Supp.3d 216, 222 (E.D.N.Y. 2016)…………………………………………………...3

*Holland v. Edwards*
282 A.D. 353 (1st Dept. 1953)...………………………………………………………………..6

*Langhorne v. Port Authority of New York*
Case No. 03-civ-4610-(RBG/GWG), 2005 WL 3018265 (S.D.N.Y. Nov. 10, 2005)………3

*Major League Baseball Props., Inc. v. Calvino, Inc.*
542 F.3d 290, 310 (2d Cir. 2008)………………………………………………………………3

*New York City Comm'n on Human Rights v. Boll*
1974 WL 2796 (N.Y. Sup. Ct. Aug. 8, 1974)………………………………………………….3

*Noble v. Weinstein*
335 F.Supp.3d 504 (S.D.N.Y. 2018)…………………………………………………………..8-10

*Scaglione v. Chappaqua Cen. School Dist.*
209 F.Supp.2d 311 (S.D.N.Y 2002)…....………………………………………………………6

*Secor v. City of New York*
13 Misc. 3d 1220(A), 2006 WL 2918060, *1-2 (N.Y. Sup. Ct. 2006)………………………3

*Sellick v. Agency-Castle Point*
09-civ-6616-(DLC), 2010 WL 2813431, *10 (S.D.N.Y. Jul. 16, 2010)…………………….3

*Sharpe v. MCI Comm. Serv. Inc.*
684 F.Supp.2d 394, 400 (S.D.N.Y. 2010)……………………………………………………3

*Sibley Memorial Hospital v. Wilson*
488 F.2d 1338, 1342 (D.C.Cir.1973)……………………………………………………........6

*Wilborn v. S. Union State Comm. College*
720 F. Supp. 2d 1274 (M.D. Ala. 2010)……………………………………………………….3

*Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004)…….…………….....3-4

Defendants Bruce Weber ("Weber") and Little Bear, Inc. ("Little Bear") (collectively, "Defendants"), file this reply memorandum of law in support of their Motion for Summary Judgment (Dkt. #78) dismissing the complaint of plaintiff Jason Boyce ("Boyce").

## I.
## NO DISPUTED ISSUE OF MATERIAL FACT ON EMPLOYMENT CLAIMS

A.  **Weber's Testimony About The Purpose Of The Shoot Is Unrebutted**

Defendant showed that there is no genuine dispute Boyce's photoshoot with Weber was just that—a photoshoot with a photographer that did not involve any job opportunity. (Dkt. #79 at 1, 10, 14-15; Dkt. #80, ¶¶50-54). Weber did the shoot as a favor to Boyce's agent, Jason Kanner, and not for employment. (*Id.*)

1.  **The Opposition Papers Confirm No Disputed Material Fact**

Boyce offers no evidence to dispute that: (i) Weber was appreciative and grateful to Kanner because Kanner had just supplied top-rate models at below-rate pay for a recent Barney's shoot (Dkt. #96, ¶¶50); (ii) Kanner called Weber and asked him to shoot Boyce as a favor to Kanner (Dkt. #96, ¶¶53);[1] and (iii) Weber agreed to shoot Boyce for Boyce's modeling book as a favor to Kanner for his help on the Barney's shoot, not for employment (Dkt. #96, ¶¶54).[2]

Boyce offers no evidence to the contrary. *First*, according to Boyce's theory of the case, Weber is the employer or employment agency who wanted to shoot Boyce so that Weber could consider Boyce for a job or referral. (Dkt. #95, at 1). As such, only Weber knows why he was willing to shoot Boyce in December 2014, and his testimony is unequivocal he agreed to this as a favor to an agent who had helped him. Boyce submitted no evidence to the contrary.

---

[1] As he does so often in his Response to the 56.1 Statement, Boyce disputes this without contrary evidence. (*Id.*)

[2] Boyce is correct that this paragraph of Defendants' Rule 56.1 Statement mistakenly did not cite all relevant pages from the Weber deposition. (*Id.*) The rest of the relevant pages are cited in paragraph 53.

*Second*, Boyce does not dispute that only Kanner and Weber were on the call when Kanner asked Weber to shoot Boyce as a favor. (Dkt. #96, ¶¶53-54). Boyce offers no testimony from Weber or Kanner to contradict Weber's testimony. Notably, Boyce pleaded that he gave Kanner complete *control* over his modeling career in New York. (Dkt. #1-1, ¶¶2,4, 6, 8-9, 14, 19-20). He was contractually prohibited from seeking modeling employment in New York except through Kanner. (*Id.*)

In sum, the *only* evidence why Weber agreed to shoot Boyce is Weber's uncontradicted testimony that, at Kanner's request, he agreed to shoot Boyce as a favor to Kanner, and not for any prospect of employment. Thus, summary judgment is warranted for the employment claims.[3]

### 2. Boyce's Testimony On His Beliefs And Hopes Do Not Raise A Material Issue of Fact

Avoiding testimony from knowledgeable witnesses, Boyce attempts to defeat summary judgment by relying on his own purported "belief" that Weber wanted to shoot him for employment purposes at a "go-see." (Dkt. #95 at 1; *see also* Dkt. #97, ¶¶50-54, 66, 68, 93, 96). Boyce testified that he believed the shoot was a "test shoot"[4] (*not* a "go-see"), it did not involve a job, and he "hop[ed] that if [Weber] took [his] picture, that he would pick [him] for something . . . or that maybe it would lead to a bigger opportunity." (Dkt. #98-4; Boyce Tr. 147:16-148:10).

---

[3] Thus, even if Boyce can show Defendants are "employers" or "employment agencies" under the statutes, Boyce has not established that Weber met him the day of the shoot in those alleged capacities.

[4] Boyce testified that Kanner told him the shoot was a "test shoot," but did not testify how Kanner uses that term. (Dkt. #98-4; Boyce Tr. 137:6-20). The opposition papers fail to disclose that Boyce testified that, in his mind, a "test shoot" can be just for photos for a model's book. (Dkt. #81-1; Boyce Tr. 264:17-19). The opposition papers also fail to disclose that Boyce testified he wanted to shoot with Weber to give him "street cred . . . with other clients, with people that look at your book, with other photographers. It's a huge boost to your resume as a model." (Dkt. #98:-4; Boyce Tr. 362:9-12). Boyce does not dispute that he shot similar portrait sessions with other photographers with no prospect of a job opportunity, but only the chance to add photographs to his "book." (Dkt. #80, ¶¶12 (Darren Tieste), 13 (Doug English), 46 (Joe Lally); *see also* (Dkt. #81-1; Boyce Tr. 264:8-19 (Hoover); Reply Declaration of Dan Brown ("Reply Brown Decl."), Ex. A; 320:22-321:3 (Dive)). Boyce's admissions put the lie to his pretend incredulity that the shoot was not a job interview or request for employment agency services.

Boyce relies on his self-serving testimony that: "I would characterize [the photoshoot] as an interview with Bruce Weber" (for no job). (Dkt. #98-4; Boyce Tr. 146:18-147:10).[5]

Boyce's purported subjective belief that Weber had granted him "an interview" when Weber agreed to shoot him is inadmissible. As explained above, Boyce has no first-hand knowledge why Weber was willing to shoot him. Only Weber knows why he agreed to shoot Boyce. Boyce was not on the call when his agent asked Weber to shoot Boyce as a favor, and Weber agreed. Boyce's jewelry store conversation with Weber involved only "small talk" and Weber's statement that he would set up the shoot that he had already agreed to as a favor to Kanner. (Dkt. #96, ¶¶50-54, 66, 68).[6] As noted, Boyce was not even allowed to seek modeling employment in New York, except through Kanner. (Dkt. #1-1, ¶20).

Thus, Boyce's purported beliefs are inadmissible because they are not based on first-hand knowledge, are speculative, and any reliance on what Kanner told him is inadmissible hearsay.[7]

---

[5] Boyce's cases do not include circumstances where the evidence, much less undisputed evidence, is that the purpose of the encounter was solely as a favor, not for employment; nor do his cases involve facts where one would not necessarily expect every encounter to be employment related. *See, e.g.*, *Secor v. City of New York*, 13 Misc. 3d 1220(A), 2006 WL 2918060, *1-2 (N.Y. Sup. Ct. 2006) (*modeling agency* soliciting interviews for a specific modeling job); *New York City Comm'n on Human Rights v. Boll*, 1974 WL 2796 (N.Y. Sup. Ct. Aug. 8, 1974) (networking group *solely devoted* to placing alumni in jobs and participants *invariably received jobs*); *Wilborn v. S. Union State Comm. College*, 720 F. Supp. 2d 1274 (M.D. Ala. 2010) (truck driver training company *obligated* to place graduates in jobs). Contrary to Boyce's argument, *Langhorne v. Port Authority of New York*, Case No. 03-civ-4610-(RBG/GWG), 2005 WL 3018265 (S.D.N.Y. Nov. 10, 2005) is on point because the alleged "employment agency" interacted with plaintiff in a manner that did *not* involve it providing employment agency services.

[6] Despite Boyce's protests, he offers no evidence that Weber had not agreed to the shoot before the jewelry store meeting. In fact, Boyce testified, consistent with Weber's testimony, that he believed Weber *had agreed* to the shoot *before* the jewelry store meeting. (Dkt. #98-4; Boyce Tr. 137:6-138:21). It was not until the end of the deposition when Boyce said that *he did not know whether Weber had already agreed to the shoot*. (Reply Brown Decl., Ex. A; Boyce Tr. 365:5-366:2). Boyce's changing his inadmissible "belief" from one that supports Defendants' position to one that is neutral cannot defeat summary judgment.

[7] *See Major League Baseball Props., Inc. v. Calvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008); *see also Sellick v. Agency-Castle Point*, 09-civ-6616-(DLC), 2010 WL 2813431, *10 (S.D.N.Y. Jul. 16, 2010) (dismissing plaintiff's discrimination claims on summary judgment where plaintiff's evidence amounted to conclusory statements about his subjective beliefs and inadmissible statements about what other people told him); *Sharpe v. MCI Comm. Serv. Inc.*, 684 F.Supp.2d 394, 400 (S.D.N.Y. 2010) (granting summary judgment in employment case against plaintiff who failed to present concrete particulars and relied on conclusory statements); *Chen v. DG & S NY, Inc.*, 406 F.Supp.3d 216, 222 (E.D.N.Y. 2016) (granting summary judgment where plaintiff's "subjective beliefs, no matter how genuinely held, are simply of no consequence in assessing" whether defendant was plaintiff's employer); *Williams v.*

Defendants raised these issues in their papers, (Dkt. #79 at 8 n. 12; Dkt. #80 at 13 n.3), but Boyce did not address them.[8]

### 3. Boyce's Assumption That A "Go-See" Cannot Be a Favor Shoot Is Contradicted By The Evidence

Although Boyce testified the shoot was *not* a "go-see," Boyce's opposition is inexplicably based on the notion that a "go-see" cannot be a favor shoot. Boyce relies on the testimony of Little Bear employee, Elizabeth Murphy, that a model would go to the Little Bear studio only for a "go-see," casting, or brand campaign. (Dkt. #96, ¶54). Boyce argues a "go-see" cannot be a favor shoot and ignores Murphy's testimony that models went to the studio to be photographed purely as favors to agents—just like here. (Reply Brown Decl., Ex. C; Murphy Tr. 47:17-24; 66:10-68:2; 69:7-72:25). Weber referred to the favor shoots as a "portrait sessions," and Murphy called them "favor go-sees." (*Id.*)[9] The substance is the same; the imprecise industry jargon is immaterial.[10] Not everyone uses these terms the same way all the time. (*Id.*). Defendants' occasional reference to the shoot as a "go-see" (Dkt. #97, ¶101) does not contradict the undisputed evidence the shoot was a favor from Weber to Boyce's agent.

---

*R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004) (cited by Boyce) (granting summary judgment where plaintiff's subjective, personal disappointments were not evidence of adverse employment action).

[8] When Boyce's counsel made a similar argument in *Ardolf v.* Weber, Case No. 18-cv-12112, Judge Daniels responded: "But that's not knowledge, that's a belief" and "What [plaintiff] believes is not admissible." (Reply Brown Decl., Ex. B; 2/11/20 Hrg. Tr. 67:21-23, 81:11-13).

[9] This is not the only instance of Boyce using misleading excerpts. For example, Boyce states, "Weber never conducted a portrait session at Little Bear." (Dkt. #96, ¶12). The only basis for this statement is Murphy's testimony that Murphy had "*never seen commissioned* portrait sessions" at Little Bear. (*Id.*) (italics added). Boyce *excised* the part of the excerpt in which Murphy clarified that she was referring to portrait sessions for *paying* clients (Dkt. #98-6; Murphy Tr. 34:24-35:7).

[10] Boyce relies on his inadmissible testimony that Kanner described the jewelry store meeting as a "go-see," but Boyce does not testify how Kanner uses that term. While this is necessarily deep in the realm of hearsay and speculation (because Boyce relies *only* on hearsay and speculation), there is nothing inconsistent with Kanner using his goodwill with Weber to request a favor shoot for his client, and at the same time, pumping up his client to make a great impression.

### 4. Boyce's Arguments From Documents Are Rank Speculation

Boyce argues the jury should "infer" the purpose of the shoot from the few non-negative written statements Weber made when he responded to emails and texts from Boyce's agents. (Dkt. #97, ¶87-91).[11] In the face of Weber's undisputed testimony of his discussion with Kanner that led to the actual shoot, and the long history exhaustively laid out in the moving papers (Dkt. #79 at 3-10; Dkt. #80, ¶¶19-84 ),[12] this is simply an invitation to speculate.[13] *See Stein v. United States*, 07-civ-2684-(LMM), 2009 WL 195953, *4 (S.D.N.Y., Jan. 28, 2009) (discrediting testimony is not a sufficient basis to defeat summary judgment).

In sum, Boyce improperly offers only inadmissible hearsay, misleading descriptions of testimony, and rank speculation to defeat summary judgment. The only record evidence is that Kanner, Boyce's agent, asked for the shoot as a favor, not for employment, and Weber agreed.[14]

---

[11] Although it would not alter the outcome, Boyce's testimony that Todd told him that Weber told Todd that Weber wanted to meet with Boyce in California (for reasons unknown) is inadmissible hearsay. (Dkt. #97, ¶89). It is also contradicted by Todd, who admitted that Weber never sought to meet Boyce. (Reply Brown Decl., Ex. D; Todd Tr. 113:16-114:11; *see also* Dkt. #81-2; Weber Tr. 138:5-140:8). Todd said Boyce was just hoping that Weber would be interested in him, but that Weber never was. (Dkt. #98-3; Todd Tr. 132:1-8). Thus, Boyce wants the jury to read the March 2013 Todd-Weber text messages the way neither participant does, to ignore Weber's undisputed testimony the December 2014 shoot was from Kanner asking a favor, not for employment. This is insufficient.

[12] The contemporaneous November-December 2014 written communications do *not* negate Weber's testimony. They show that: (A) Kanner pressed Weber to shoot Boyce, sending (non-nude) photos (Dkt. #81, Exs. O, J, Q, S); (B) Weber thanked Kanner "for helping us with this Barney's thing" (Dkt. #81, Ex. Q); (C) *when Weber expressed an interest in another model (Braeden) over Boyce, Kanner keeps pressing for Weber to see Boyce* (Dkt. #81, Ex. S); (D) in the days before the shoot, Kanner sent new clothed photos of Boyce and insisted to that Weber "HAVE TO MEET [Boyce] NEXT WEEK" (capitals original) and then sent even more photos of Boyce (Dkt. #81, Exs. T, U); and on December 15, Kanner wrote to Weber stating: "I know that Jason Boyce has been trying to set up a time to see you. I know you are busy and I really appreciate that you will see him" (Dkt. #81, Ex. V). Indeed, these communications, consistent with others in Defendants' 56.1 Statement and the entire record, show that Weber ignored Boyce's pitches and pictures, while reacting positively to other models pitched by Kanner and Todd.

[13] Boyce would have the Court review these few communications in isolation instead of the whole record, which is inappropriate on summary judgment. *See Alvarado v. Manhattan Worker Career Ctr.*, 01-civ-9288-(CBM), 2002 WL 31760208, *10 (S.D.N.Y. Dec. 10, 2002).

[14] Boyce states, "[a]n invitation to a job interview, even if extended as a favor, is still an invitation to a job interview. (Dkt. #95, at 2). Even if that is true, there is *no evidence* Weber invited Boyce to a job interview.

B. **No Disputed Material Fact Boyce Did Not Apply For A Job Or Referral Services**

There is also no evidence that Boyce applied for a job or employment referral services (or that Weber was even "taking" applications for any particular job as a purported employer or employment agency) (Dkt. #79 at 1, 10, 12-14; Dkt. #96, ¶¶50-54). The only competent evidence is Weber's testimony that Boyce, through Kanner, pressed Weber to shoot Boyce as a favor to Kanner, and not for a job or referral services. Boyce identified no contrary evidence and does not even identify any alleged job opportunity. (Dkt. #96, ¶72). Summary judgment is warranted for this additional reason.[15]

C. **Boyce's Opposition Papers Show An Alarming Level of Conjecture**

In attempting to set out a prima face case,[16] Boyce showed that his employment claims are dependent on the jury making up facts. (*See, e.g.*, Dkt. #95, at 19 (asking the jury to imagine that at the time of an April 2015 casting "Weber found the [Boyce] photographs . . . remembered that Boyce pulled away when Weber tried to kiss him, and decided not to refer him for employment"); (Dkt. #95, at 18 (asking the jury to observe photographs of Boyce to speculate he was qualified for a job that did not exist)).[17] Boyce's advocacy cries out for judicial scrutiny.

---

[15] Boyce's argument and cases on "informal" applications are inapplicable because, given the undisputed evidence, Boyce was at Little Bear the day of the shoot because Kanner asked for a favor shoot and Weber agreed to a favor shoot, *not* because Kanner applied for a job on Boyce's behalf and Weber agreed to see Boyce for a job. This was not unlike Boyce's shoots with other photographers for his modeling book. *Supra* at n.4.

[16] Boyce cites *Holland v. Edwards*, 282 A.D. 353 (1st Dept. 1953) for the proposition that his employment claims should be construed liberally, alleging the court did not consider whether the plaintiff was qualified or whether the defendant was motivated by discriminatory animus. Ignoring those elements of a prima facie case of discrimination is inconsistent with present-day case law. *See Bryant v. Adecco Employment Services, Inc.*, 01-civ-0051-(HGM/GJD), 2006 WL 2827692, *2 (N.D.N.Y Sep. 30, 2006) (applying *McDonnell Douglas Corp.* and requiring qualified applicant and that adverse employment action gave rise to an inference of discrimination for prima facie case). Boyce also cites to *Sibley Memorial Hospital v. Wilson*, 488 F.2d 1338, 1342 (D.C.Cir.1973) and *Scaglione v. Chappaqua Cen. School Dist.*, 209 F.Supp.2d 311 (S.D.N.Y 2002) for the premise that Defendants, even if not Boyce's employers, still cannot interfere with Boyce's employment opportunities. First, it is not clear that is *Sibley's* holding (which states a *covered* employer cannot interfere with an individual's employment opportunities with *another* employer. Second, there is no evidence in the record Defendants have done so.

[17] While none of this is material to the Motion, Boyce's assertion in his papers that Weber "invited" him to the April 2015 casting because Weber "loved" him, (Dkt. #95 at 18; Dkt. # 97,¶¶121-22), is contradicted by his testimony that

## II.
## NO DISPUTED ISSUE OF MATERIAL FACTS ON SEX TRAFFICKING CLAIM

To apply the Sex Trafficking Act to this case, Boyce must prove that Weber committed the *actus reus* of recruiting and enticing Boyce to come to the Little Bear studio. Thus, Boyce must demonstrate that, when Weber was recruiting and enticing him to come to the Little Bear studio, Weber had the *mens rea* that later on (*i.e.*, once Boyce was at Little Bear), Weber would use fraud or force to cause a commercial sex act. 18 U.S.C. § 1951(a)(1); *see also* (Dkt. #79, at 16). By its terms, the *actus reus* of recruitment and enticement must necessarily *precede* the later planned use of fraud or force to cause a commercial sex act. (*Id.*)

On this record, a jury cannot conclude that Weber committed the *actus reus* of the statute—recruiting and enticing Boyce to Little Bear. The undisputed evidence is that: (i) Boyce engaged in an unprecedented, relentless, multi-year campaign to recruit and entice Weber to photograph him (that continued for over a year and a half after the portrait session), (ii) Weber never initiated conversations about photographing Boyce (despite agents inundating him with photographs of Boyce), and (iii) Weber finally agreed to the portrait session requested by Boyce's agent as a favor. (Dkt. #79 at 10, 16-20; Dkt. #80, ¶¶19-84).

Boyce tries three approaches to side-step the hole in his sex trafficking claim. *First*, Boyce focuses only on the "small talk"[18] at the jewelry store[19] where Weber purportedly stated

---

Weber did *not* invite him to the casting, that he was not initially picked for the casting, and that Kanner had to beg Weber to let him attend. (Dkt. #98-4; Boyce Tr. 246:11-23). Boyce's hope that a meeting with Weber would make his career as a model was just a "wish," (Dkt. #98-3; Todd Tr. 132:1-8), and Boyce's attempts to base his employment claims on that wish is conclusory and speculative. Boyce disputes Defendants' evidence that he was a failed model by referring to two small jobs he was booked for in six years of modeling. (Dkt. #96, ¶14). Boyce does not dispute that he made no money modeling in 2014. (Dkt. #96, #17). And Boyce's agent testified that Boyce's career never "got off the ground." (R. Brown Decl., Ex. D; Todd Tr. 54:14-24; 75:22-76:2, 121:4-13, 137:18-138:11,163:13-16).

[18] (Dkt. #96, ¶67).

[19] Boyce claims Weber (not Kanner) "arranged" for the jewelry store meeting, but he cites no evidence of this. (Dkt. #95, at 23; Dkt. #97, ¶¶92-93, 97-98).

he would set up the shoot with Kanner. (Dkt. #95 at 23). But none of this can be recruitment or enticement because, as discussed above, the undisputed evidence is that Weber had agreed to shoot Boyce, *at Kanner's request,* as a favor to Kanner, *before* the jewelry store meeting.

*Second*, Boyce relies on one case, *Ardolf v. Weber*, 332 F.R.D. 467 (S.D.N.Y 2019) (Dkt. #95, at 23), but fails to address the monumental differences between *Ardolf* and this case, identified in the moving papers. (Dkt. #79, at 19, n.22). In *Ardolf*, Judge Daniels denied a motion to dismiss based on the allegation that plaintiffs and their agents were passive and fell prey to Weber's alleged personal, affirmative steps to lure them to photoshoots. (*Id.*) In *Ardolf* there was no allegation that the alleged invitations to those shoots came about only at the urging of the plaintiffs' agents as favors to them (and after years of relentless, fruitless hounding). (*Id.*).[20]

This case is a complete mismatch with *Noble*[21] and its progeny. (Dkt. #79, at 18-20). Those cases did not involve the alleged victim relentlessly enticing and recruiting the alleged sex trafficker, and the sex trafficker finally agreeing to meet with the victim only at the request of the victim (through the victim's agent) as a favor. (*Id.*) Boyce cited no sex trafficking case within a country mile on enticement.

*Finally*, in a last-ditch effort to stave off summary judgment, Boyce fatally ignores the sequencing of the Sex Trafficking Act. Boyce argues that Weber's alleged "fraud" that

---

[20] Also significant in the *Ardolf* Case was the incredible allegation that "[m]ajor brands and magazines in the industry delegated complete power and control over the modeling shoots to [Weber], which included deciding . . . which models were ultimately chosen for each campaign." *Ardolf*, 332 F.R.D. at 474; (Dkt. #79, at 19 n.22). Defendants demonstrated with competent evidence that Weber had no authority to select or hire models for campaigns. (Dkt. #96, ¶11). Boyce responds with a page of claimed testimony that does not purport to dispute this fact. (*Id.*) In his counter-statement, Boyce states that Weber was responsible for selecting models for campaigns and editorials. (Dkt. #97, ¶15). But the only evidence Boyce cites is inadmissible testimony of one male model (also represented by Boyce's counsel and who appeared at the press conference announcing the filing of this case) who said he "believed" Weber was the reason he was cast for one job. (*Id.*) Boyce ignores both Weber's competent, undisputed testimony and that of his own agent, Todd, who acknowledged that Weber did not have the final say in choosing models, and that power belonged to the client alone. (Dkt. #81-3; Todd Tr. 73:6-11, 75:3-14).

[21] *Noble v. Weinstein*, 335 F.Supp.3d 504 (S.D.N.Y. 2018).

supposedly "caus[es]" the alleged "commercial sex act" (*i.e.*, Weber's alleged mid-shoot puffery and "fraudulent" breathing exercises) is *also* Weber's alleged recruitment and enticement of Boyce to the shoot. (Dkt. #95 at 23-25). But under the statute, recruitment and enticement are the means to get the victim to the location (the shoot at Little Bear) where the perpetrator intends to use fraud or force in the future to cause the sex act. Recruitment and enticement must *precede* the planned use of fraud or force. Recruitment and enticement cannot be the same thing as the planned use of fraud to cause a commercial sext act.

      Boyce asserts that, based on the above alleged mid-shoot fraudulent conduct by Weber, the jury can determine that "Weber enticed Boyce to engage in a sex act." (Dkt. #95 at 25). Boyce is conflating elements of the claim and negating the sequencing built into the statute. Fraud or force, not the prior recruitment and enticement, has to cause the commercial sex act.

      In support of his counter-textual argument, Boyce argues that the plaintiff in *Noble* was "entice[d] *to engage in a sex act.*" (Dkt. #95 at 25) (italics added by Boyce). Based on that partial excerpt from *Noble*, Boyce ignores the unambiguous language of the statute that enticement is the means to lure the person to the location where fraud or force is then used to cause the sex act. Instead, relying on the partial excerpt, Boyce argues the *actus reus* of recruitment and enticement is supposed to cause the sex act. (Dkt. #95 at 25). The partial excerpt is *not* in *Noble's* discussion of the recruitment or enticement element of the statute. *Noble*, 335 F. Supp. 3d at 517-18. It is in the discussion about Weinstein knowing that fraud or force would later be used to cause the sex act. *Id.* The full except from *Noble* ("Harvey would use *fraudulent means* to entice Noble *to engage in a sex act* with him") confirms that Judge Sweet was referring to the later use of "fraud or force" *Noble*, 335 F. Supp. 3d at 518 (italics added). In the preceding

paragraph, Judge Sweet clarified that enticement or recruitment precedes the planned use of fraud or force to cause the sex act:

> Defendant must have recruited or enticed Plaintiff with the knowledge that *certain statutory-prohibited means [i.e., fraud or force] will be used to cause plaintiff to engage in a sex act.*

*Noble*, 335 F. Supp. 3d at 518 (italics added); *see also* 335 F. Supp. 3d at 514-15. Boyce misleadingly excerpts *Noble* to argue against the clear text of the statute, the *Noble* opinion as a whole, and every other case on the Act.[22] There is no evidence of recruitment or enticement.[23]

### III.
### CONCLUSION

For all the foregoing reasons, the Court should grant Defendants' motion for summary judgment and dismiss all counts of Boyce's Amended Complaint.

Dated: March 19, 2020

| | |
|---|---|
| By: /s/ Daniel Brown<br>**Sheppard Mullin Richter & Hampton LLP**<br>30 Rockefeller Plaza<br>New York, NY 10112<br>Email: dbrown@sheppardmullin.com<br>Telephone: (212) 634-3095<br>Facsimile: (212) 655-1768<br>*Attorneys for Defendant Bruce Weber* | By: /s/ Jayne C. Weintraub<br>**Sale & Weintraub, P.A.**<br>2 South Biscayne Blvd.<br>One Biscayne Center – 21st Floor<br>Miami, Florida 33131<br>Email: jweintraub@saleweintraub.com<br>Telephone: (305) 374-1818<br><br>By: /s/ Jonathan Etra<br>**Nelson Mullins Broad and Cassel**<br>2 South Biscayne Blvd.<br>One Biscayne Center – 21st Floor<br>Miami, Florida 33131<br>Email: jonathan.etra@nelsonmullins.com<br>Telephone: (305) 373-9447 |

---

[22] Boyce's contention that *Aguirre v. Best Care Agency, Inc*., 961 F.Supp.2d 427 (E.D.N.Y. 2013) and *Shuvalova v. Cunningham,* No. 10-CV-02159, 2010 WL 5387770, at *4 (N.D. Cal. Dec. 22, 2010) are inapplicable turns on Boyce's same misreading of the Sex Trafficking Act. (Dkt. # 95 at 24-25).

[23] Because they are irrelevant to the Motion, this Reply does not address the large swaths of false, defamatory, and diversionary attacks and innuendo in Boyce's sanctionable Rule 56.1 Counterstatement.