UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                            :
JASON BOYCE,                                                :
                                                            :
                          Plaintiff,                        :
                                                            :            19-CV-3825 (JMF)
              -v-                                           :
                                                            :            OPINION AND ORDER
BRUCE WEBER and LITTLE BEAR, INC.,                          :
                                                            :
                          Defendants.                       :
                                                            :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

     In this case, Jason Boyce, a former fashion model, brings claims against Bruce Weber, a

well-known fashion photographer, and Weber's production company, Little Bear, Inc., for sexual

harassment and discrimination under the New York State Human Rights Law, N.Y. Exec. Law.

§ 290 *et seq.*, and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*,

and for sex trafficking under the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C.

§ 1591 *et seq.*  Boyce alleges that, during a one-on-one photoshoot, Weber directed him to

remove his shirt, pants, and underwear and then took Boyce's hand and used it to rub Boyce's

genitals and then to touch Weber's own genitals through Weber's pants.  On September 1, 2020,

the Court granted in part and denied in part Defendants' motion for summary judgment.  *See*

*Boyce v. Weber*, No. 19-CV-3825 (JMF), 2020 WL 5209526 (S.D.N.Y. Sept. 1, 2020) (ECF No.

122).  Trial is scheduled to begin on October 11, 2021.  *See* ECF No. 158.

     Now pending are motions *in limine* filed by both parties.  *See* ECF Nos. 142-43.  The

Court addresses here the most significant of these motions, namely the parties' cross-motions to

admit or exclude (1) the testimony of ten male models who claim that Weber also touched their

genitals or otherwise behaved in a sexually inappropriate manner during one-on-one photoshoots

between the early 1980s and 2014 (the "Non-Party Accusers") and (2) the testimony of three male models who claim that Weber always behaved appropriately when photographing them (the "Anti-*Modus Operandi* Witnesses").[1]  For the reasons that follow, the Court concludes that the Non-Party Accusers' testimony as to Weber's other conduct is admissible under both Rule 404(b) and Rule 415 of the Federal Rules of Evidence to the extent that the conduct is sufficiently similar in nature and close in time to the alleged conduct at issue.  More specifically, the Court concludes that, subject to an assessment of cumulativeness at trial, the testimony of Non-Party Accusers Josh Ardolf, Anthony Baldwin, Buddy Krueger, Jake Madden, Mark Ricketson, and Jason Van Oijen is admissible.  By contrast, the Court excludes the testimony of Non-Party Accusers Anthony Barbieri, Monty Hooper, Darryl Janney, and Ron Kochevar, as well as the testimony of the Anti-*Modus Operandi* Witnesses.  The Court will resolve the parties' remaining motions *in limine* at (or closer to) the final pretrial conference and, thus, reserves judgement on them for now.

## BACKGROUND

The following is a brief summary of the factual allegations that Boyce will seek to prove at trial, derived from the Complaint and his submissions here and at summary judgment.

In December 2014, Boyce's modeling agency arranged for Boyce to have a photoshoot with Weber at Weber's studio.  ECF No. 1-2 ("Compl."), ¶¶ 25-27.  Boyce understood that "this was an important professional opportunity" because Weber was "known for jumpstarting the careers of various male models."  *Id.* ¶¶ 21, 23.  Boyce and Weber were alone in the studio when

---

[1]      Five of the Non-Party Accusers have sued Weber under the TVPA in a separate action pending before the Honorable George B. Daniels, *see Ardolf v. Weber*, No. 18-CV-12112 (GBD) (SN) (S.D.N.Y.), but Buddy Krueger's claims were dismissed as time-barred on summary judgment in September 2020, *see Ardolf v. Weber*, No. 18-CV-12112 (GBD) (SN), 2020 WL 5209525 (S.D.N.Y. Sept. 1, 2020).

the photoshoot began.  *Id.* ¶ 27.  After taking a few photos, Weber told Boyce that he seemed "very tense" and directed him to sit down in a chair, whereupon Weber began rubbing oil on Boyce's forehead.  *Id.* ¶¶ 30-31.  Weber then resumed the photoshoot and eventually directed Boyce to remove his shirt.  *Id.* ¶¶ 31-33.  At that point, Weber placed his hand on Boyce's chest and told him to breathe; Weber then said: "I want you to put your hand on me, wherever your energy tells you to go."  *Id.* ¶ 34.  Boyce touched Weber's chest; Weber then guided Boyce's hand down Weber's torso and touched Boyce's chest with his own (Weber's) hand.  *Id.* ¶¶ 35-36.  Weber then directed Boyce to remove his pants and to "decide to pull [his] underwear higher or lower."  *Id.* ¶¶ 37-38.  Next, Weber resumed rubbing Boyce's face, telling him to "relax."  *Id.* ¶ 39.  Weber placed his own hands over Boyce's hands, which he then used to remove Boyce's underwear.  *Id.* ¶ 40.  Weber directed Boyce to put his (Boyce's) hands on himself, "wherever [he] felt [his] energy go"; after Boyce touched his face, shoulders, and chest, Weber took Boyce's hand and used it to rub Boyce's genitals.  *Id.* ¶¶ 42-44.  Weber then used Boyce's hands to touch Weber's genitals, through his pants, before putting his own (Weber's) fingers in Boyce's mouth.  *Id.* ¶¶ 44-45.  Finally, Weber told Boyce that he would "go really far" if "[he] just had confidence" and asked Boyce how ambitious he was; when Boyce did not answer, Weber told him to put his underwear on and ended the photoshoot.  *Id.* ¶¶ 45-46.  As Boyce was leaving, Weber directed him to close his eyes and then kissed him on the lips.  *Id.* ¶ 47.

Boyce seeks to prove that this conduct was consistent with Weber's *modus operandi* of "sexually touch[ing], fondl[ing], and/or kiss[ing] male models during one-on-one photoshoots, under the guise of directing the photoshoot and/or otherwise offering creative direction.  One of [Weber's] common practices was to engage in 'breathing exercises' with the models."  *Id.* ¶ 118.  According to Boyce, this alleged pattern of behavior also "routinely" involved "empty promises

of career advancement." *Id.* ¶ 131.  To that end, Boyce moves to admit, and Defendants move to exclude, the testimony of the following ten Non-Party Accusers:

- **Josh Ardolf:** Ardolf is expected to testify that, in 2011, during a one-on-one photoshoot in an open hallway, Weber led him in a breathing exercise; directed him to take Weber's hand and place it on his own (Ardolf's) body, "[any]where [he] fe[lt] the energy"; and then touched Ardolf's genitals with his (Weber's) hand.  ECF No. 149-4 ("Ardolf Dep."), at 46, 72-73, 80-82, 85-86.  Ardolf and Weber later discussed Ardolf's career, and Weber suggested that Ardolf was a candidate for an upcoming Abercrombie & Fitch photoshoot. *Id.* at 87-88.

- **Anthony Baldwin:** Baldwin is expected to testify that, during a group photoshoot in 2009, a production assistant summoned Baldwin to Weber's hotel room, where Weber took Polaroid photos of Baldwin in his underwear.  ECF No. 149-5 ("Baldwin Dep."), at 50, 53, 75-76, 78, 89, 102, 338-39.  When Baldwin refused to pose nude, Weber threatened to send him home. *Id.* at 94-96.  Weber then led Baldwin in a breathing exercise, which involved directing Baldwin to move Baldwin's hand down Baldwin's chest. *Id.* at 98-102.  After a few more photographs, Weber directed Baldwin to adjust Baldwin's underwear. *Id.* at 104-05.  He told Baldwin he was not doing it correctly, reached into Baldwin's underwear, and grabbed Baldwin's genitals. *Id.*

- **Anthony Barbieri:** Barbieri is expected to testify that, in the early 1990s, Weber invited him to a test shoot, where Weber directed Barbieri to remove his shirt and pull his pants and underwear down.  Weber then directed Barbieri to turn his head to the side and, while his head was turned, Weber grabbed Barbieri's genitals and attempted to perform oral sex on him, until Barbieri jumped back.  ECF No. 167-11 ("Barbieri Dep."), at 93-94, 101, 129, 134-36.  Weber later told Barbieri that he "kn[ew] [Barbieri] didn't want to play the game, but [that] it[] [was] going to be a much tougher road for [him] doing things on [his] own terms." *Id.* at 220.

- **Monty Hooper:** Hooper is expected to testify that, at a meeting with Weber at Weber's studio in 2014, Weber asked Hooper to lower his pants, and when Hooper did not lower them past his waist, Weber told him the photoshoot was finished.  ECF No. 167-10 ("Hooper Dep."), at 40, 61-62.  After Hooper dressed, Weber suggested that they try a breathing exercise and placed Hooper's hand on Weber's chest and asked if he could feel Weber's energy. *Id.* at 61-62.  The photographer then told Hooper that he wanted to "pass the energy to [Hooper]" and moved Hooper's hand to Hooper's chest. *Id.* at 62.  Finally, Weber hugged Hooper and let his hands linger on Hooper's waist, which made Hooper uncomfortable, while saying that "if [Hooper] learn[ed] how to be more vulnerable, [Hooper's] modeling career . . . could go a lot farther." *Id.* at 63.

- **Darryl Janney:** Janney is expected to testify that in the early 1980s, Weber retaliated against him for refusing to pose nude by blacklisting him from modeling jobs.  ECF No. 148 ("Defs.' Mem."), at 31-33.  Janney testified at his deposition that Weber never touched him inappropriately.  ECF No. 149-16 ("Janney Dep."), at 349.

- **Ron Kochevar:** Kochevar is expected to testify that, at a meeting with Weber at a hotel in the late 1990s, Weber photographed Kochevar and directed him to remove his shirt and pants.  ECF No. 167-9 ("Kochevar Dep."), at 47-48, 61-64.  Weber said that Kochevar needed to relax and placed his (Weber's) hands on Kochevar's chest, stomach, and thigh.  *Id.* at 64, 67-68.  Weber later directed Kochevar to pull Kochevar's underwear down.  *Id.* at 71-72.  When Kochevar did not, Weber told Kochevar that he (Kochevar) "wasn't ready."  *Id.* at 72.  Kochevar understood that "if [he] left, not only was [he] not going to work with Bruce Weber, but there was a likelihood[] there were other people that [he] wasn't going to work with," so Kochevar said, "let's do this again" and undressed completely.  *Id.* at 75, 87.  While taking photos, Weber then pressed Kochevar's body against a wall and repeatedly told him to "[b]reathe," "[r]elax," "[l]et go," and "[o]pen" while touching Kochevar's genitals with the back of his (Weber's) hand.  *Id.* at 78-80, 84.  On two other occasions in the late 1990s, Weber again met with Kochevar at hotels and led him through breathing exercises before touching Kochevar's genitals with the back of his hand during photoshoots.  *Id.* at 147,150-52; 162, 174, 179-80.

- **Buddy Krueger:** Krueger is expected to testify that, during a group photoshoot in 2008, Weber took him into a side room alone to take Polaroid photos.  ECF No. 149-14 ("Krueger Dep."), at 54-55, 66-69, 74-75.  Weber led Krueger in a breathing exercise to help him relax, in which Weber placed his hand on Krueger's forehead and then moved it down Krueger's body, at one point taking Krueger's hand and placing it on top of Weber's.  *Id.* at 84-85.  Krueger tried to stop Weber when Weber's hand reached Krueger's waist, and Weber then reached into Krueger's pants and touched Krueger's genitals.  *Id.* at 85-86, 89.  Krueger is also expected to testify that, on another occasion, Weber told him: "I have more jobs for you.  You need to get more confident.  You could be successful in this industry."  *Id.* at 234.  Weber then touched Krueger's stomach and genitals.  *Id.* at 234-35.

- **Jake Madden:** Madden is expected to testify that, during a group photoshoot in 2009, Weber pulled Madden aside to a barn to take solo shots and help him relax.  ECF No. 149-9 ("Madden Dep."), at 75, 88-89, 91, 93, 104-05; Defs.' Mem. 19.  Webber said Madden "c[ould] make it far in th[e] industry" and directed him in a breathing exercise to "channel [his] energy," while placing his (Weber's) hand on Madden's chest and Madden's hand on Weber's chest.  Madden Dep. at 89, 108.  Weber then touched Madden's genitals while tucking in Madden's shirt.  *Id.* at 105, 109-10.

- **Mark Ricketson:** Ricketson is expected to testify that, during a group photoshoot in 2008, while Ricketson and Weber were alone in Weber's hotel suite, Weber used Ricketson's hand to touch Ricketson's genitals.  Defs.' Mem. 29.

- **Jason Van Oijen:** Van Oijen is expected to testify that, in 2009, Weber invited Van Oijen to his home, where he took photos of Van Oijen and told Van Oijen that he was "so handsome" and "just ha[d] to relax," before rubbing Van Oijen's genitals.  ECF No. 149-11 ("Van Oijen Dep."), at 86, 166-69.  Weber then told Van Oijen that he would consider Van Oijen for upcoming photoshoots.  *Id.* at 171-72.

## DISCUSSION

Boyce argues that the testimony of the ten Non-Party Accusers is admissible both under Rule 404(b), which provides for admission of other act evidence for certain purposes, and Rule 415, which provides for admission of evidence that a defendant has committed other sexual assaults to prove claims "based on" sexual assault.  Weber argues otherwise and contends that, even if the testimony would otherwise be admissible under either of these Rules, it is inadmissible under Rule 403.  The Court begins with Rule 404(b) and then turns to Rule 415.

### A.  Rule 404(b)

Rule 404(b) provides that "[e]vidence of any other crime, wrong, or act . . . may be admissible . . . [to] prov[e] motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b).  The Second Circuit "has adopted an 'inclusionary' approach to other act evidence under Rule 404(b), which allows such evidence to be admitted for any purpose other than to demonstrate . . . propensity."  *United States v. Scott*, 677 F.3d 72, 79 (2d Cir. 2012).  More specifically, a district court may admit evidence under Rule 404(b) if "(1) it [i]s offered for a proper purpose; (2) it [i]s relevant to a material issue in dispute; (3) its probative value is [not] substantially outweighed by its prejudicial effect; and (4) the trial court g[ives] an appropriate limiting instruction to the jury if so requested by the defendant."  *United States v. LaFlam*, 369 F.3d 153, 156 (2d Cir. 2004) (per curiam); *see Huddleston v. United States*, 485 U.S. 681, 691-62 (1988).

Conducting that analysis, the Court concludes, first, that the Non-Party Accusers' testimony is offered for a proper purpose and is relevant to a material issue in dispute — namely, Weber's knowledge and intent that he would use prohibited means to cause Boyce to engage in a commercial sex act, which Boyce must prove to prevail on his TVPA claim.  *See* Compl. ¶¶ 117-

35.  To the extent relevant here, the TVPA creates a private right of action against anyone who "knowingly . . . recruits[] [or] entices . . . a person . . . knowing . . . that means of force . . . [or] fraud . . . will be used to cause the person to engage in a commercial sex act."  18 U.S.C. §§ 1591(a), 1595.  Courts have consistently held that one way — if not the only way — to prove the knowledge element of a TVPA claim is by establishing that the defendant had a *modus operandi*, or a pattern or practice of trafficking his victims in a particular manner, such that he knew he would follow this same pattern when he recruited or enticed the victim at issue.  As the Ninth Circuit explained in the leading case on this issue: "What the statute means to describe, and does describe awkwardly, is a state of mind in which the knower is familiar with a pattern of conduct. . . .  When an act of Congress requires knowledge of a future action, it does not require knowledge in the sense of certainty as to a future act.  What the statute requires is that the defendant know in the sense of being aware of an established modus operandi that will in the future cause a person to engage in prostitution."  *United States v. Todd*, 627 F.3d 329, 334 (9th Cir. 2010).  The Second Circuit has expressly adopted this interpretation.  *See United States v. Purcell*, 967 F.3d 159, 192-93 (2d Cir. 2020) (quoting *Todd*, 627 F.3d at 334); *see also David v. Weinstein Co.*, 431 F. Supp. 3d 290, 301 (S.D.N.Y. 2019); *Ardolf v. Weber*, 332 F.R.D. 467, 475 (S.D.N.Y. 2019); *Noble v. Weinstein*, 335 F. Supp. 3d 504, 517-18 (S.D.N.Y. 2018); *United States v. Estrada-Tepal*, 57 F. Supp. 3d 164, 169-70 (E.D.N.Y. 2014).

        In light of the foregoing, testimony that tends to establish the defendant's alleged *modus operandi* is highly probative of the knowledge element of a TVPA claim, and proving knowledge is an enumerated, permissible use of other act evidence under Rule 404(b)(2).  *See* Fed. R. Evid. 404(b)(2) (providing that other act "evidence may be admissible" to prove, among other things, "knowledge").  Indeed, in a recent TVPA case, the Fourth Circuit held that

testimony tending to establish the defendant's *modus operandi* "was plainly admissible under Rule 404(b)'s exception to Rule 404(a)'s general prohibition of character evidence to prove an action in conformity therewith." *Roe v. Howard*, 917 F.3d 229, 246 (4th Cir. 2019).  The defendant in *Howard* was accused of knowingly facilitating her husband's repeated sexual assaults on the couple's former live-in housekeeper. *Id.*  The Fourth Circuit reasoned that the testimony of another former housekeeper, which closely mirrored the plaintiff's allegations, "constituted highly probative evidence regarding . . . the existence of a plan or pattern of behavior" and "was therefore admissible under Rule 404(b)(2)." *Id.*

But that does not end the analysis.  The probative value of any particular Non-Party Accuser's testimony with respect to Weber's alleged *modus operandi* turns on the similarity and temporal proximity between that witness's testimony and Boyce's allegations.  With respect to similarity, "[w]hen 'other act' evidence is offered to show knowledge or intent in particular, as opposed to other non-propensity purposes such as proof of identity or corroboration of witnesses, such evidence must be sufficiently similar to the conduct at issue to permit the jury to draw a reasonable inference of knowledge or intent from the other act. . . .  There is no necessity for synonymity but there must be *substantial* relevancy." *United States v. Cadet*, 664 F.3d 27, 32-33 (2d Cir. 2011) (internal quotation marks omitted); *see also United States v. Gordon*, 987 F.2d 902, 908 (2d Cir. 1993) (requiring a "close parallel" (internal quotation marks omitted)).[2]  With respect to temporal proximity, "[t]he district court may exclude older acts if they have become too attenuated to be relevant or too remote to render the witness's memory reliable." *United*

---

[2]      Notably, to admit other act evidence under Rule 404(b) for purposes of proving identity, there must be a higher degree of similarity between the other act evidence and the conduct at issue. *See, e.g.*, *United States v. Walia*, No. 14-CR-213 (MKB), 2014 WL 3734522, at *13 (E.D.N.Y. July 25, 2014); *United States v. Reese*, 933 F. Supp. 2d 579, 582 (S.D.N.Y. 2013). Here, of course, identity is not at issue. *Cf.* Defs.' Mem. 46.

*States v. Curley*, 639 F.3d 50, 59 (2d Cir. 2011) (internal quotation marks omitted).  But

"temporal remoteness . . . does not [necessarily] preclude . . . relevancy."  *Id.*; *see United States*

*v. Ulbricht*, 79 F. Supp. 3d 466, 480 (S.D.N.Y. 2015).

Applying these standards here, the Court finds that Ardolf, Baldwin, Krueger, Madden,

Ricketson, and Van Oijen describe conduct sufficiently similar in nature and close in time to the

conduct alleged by Boyce to warrant admission under Rule 404(b).  All six witnesses claim that

in the course of directing one-on-one photoshoots, Weber touched their genitals, caused them to

touch their own genitals, and/or caused them to touch Weber's genitals.  Like Boyce, at least

four of the six — Ardolf, Baldwin, Krueger, and Madden — are expected to testify that Weber

led them in "breathing exercises," in several instances involving chest stroking and discussions

of energy.  And at least five of the six — Ardolf, Baldwin, Krueger, Madden, and Van Oijen —

recount Weber telling them that they would have more successful modeling careers if they had

fewer inhibitions or suggesting, at least implicitly, that he would reward their compliance with

professional favors (or, conversely, retaliate against them professionally for resisting).

Additionally, the events described by these six witnesses allegedly occurred between 2008 and

2011, only a few years before the conduct alleged by Boyce.

By contrast, the Court concludes that the testimony of Barbieri, Janney, and Kochevar

should be excluded because they describe conduct that is less similar to Boyce's allegations,

more remote in time, or both.  Barbieri, Janney, and Kochevar allege conduct that occurred in the

1980s and 1990s — decades before Weber's alleged sexual misconduct toward Boyce in 2014.

Moreover, Janney explicitly testified that Weber never touched him sexually, but merely

retaliated against him professionally for refusing to pose nude.  The probative value of these

Non-Party Accusers' testimony is considerably lower than the probative value of the Non-Party

Accusers' testimony discussed above.  Hooper's testimony presents a closer call.  He alleges more recent conduct — occurring in 2014 — and claims that Weber conducted breathing exercises with him, touched his waist in a way that made him feel uncomfortable, and commented that Hooper could go further in the modeling industry if he were more vulnerable. But Hooper does not allege that Weber touched his genitals or that Weber caused him to touch either man's genitals.  Ultimately, the Court need not decide whether the testimony of these four witnesses would be admissible on their own terms under Rule 404(b).  Given the sheer number of Non-Party Accusers, the Court concludes that allowing all ten to testify would involve the "needless[] present[ation of] cumulative evidence."  Fed. R. Evid. 403.  On that basis, the Court will exclude the less probative testimony of Barbieri, Hooper, Janney, and Kochevar.[3]

Completing the Rule 403 balancing test, the Court finds that the "probative value" of Ardolf, Baldwin, Krueger, Madden, Ricketson, and Van Oijen's testimony is not "substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence," Fed. R. Evid. 403 — although the Court may revisit the question of cumulativeness during trial, *see, e.g.*, *Montanez v. City of Syracuse*, No. 16-CV-550 (BKS) (TWD), 2019 WL 4328872, at *9 (N.D.N.Y. Sept. 12, 2019) ("At trial the Court will reevaluate the necessity of [additional other act] evidence beyond the testimonies already offered[,] . . . as well as the potential for unfair prejudice in light of the evidence adduced . . . ." (internal quotation marks omitted)).  Among other things, evidence of other acts is generally not unfairly prejudicial when, as here, it is "no more sensational or disturbing" than the conduct at issue in the case.  *Curley*, 639 F.3d at 59

---

[3]      In light of that ruling, the Court need not and does not reach Defendants' argument that Barbieri, Kochevar, and Hooper should be precluded because Boyce failed to provide adequate notice of his intention to call them as witnesses at trial.  Defs.' Mem. 49-52.

(quoting *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990)); *accord United States v. Lights*, No. 15-CR-721 (RWS), 2016 WL 7098633, at *2 (S.D.N.Y. Dec. 5, 2016); *United States v. Mostafa*, No. 04-CR-356 (KBF), 2014 WL 1744717, at *6 (S.D.N.Y. Apr. 23, 2014).  Nor is the Court persuaded that the testimony of the six Non-Party Accusers "will confuse and overwhelm the jury."  Defs.' Mem. 38 (capitalization omitted).  Jurors are frequently called upon to keep track of multiple events and people, and there is no basis to conclude that the risk of confusion here substantially outweighs the probative value of the testimony at issue.  *Cf. Ardolf*, 332 F.R.D. at 481-82 ("[J]urors are perfectly capable of separating fact patterns that pertain to each individual [p]laintiff, while understanding that they may have certain elements in common.").

Defendants' other arguments for exclusion of the six Non-Party Accusers fall short.  First, Defendants contend that their testimony is not sufficiently reliable to warrant admissibility under Rule 404(b) of the Federal Rules of Evidence.  *See* Defs.' Mem. 9-33, 42-43, 51-52.  The standard of proof under Rule 404(b) is whether a jury "could reasonably conclude," by a "preponderance of the evidence," that "the act occurred and that the defendant was the actor."  *United States v. Gilan*, 967 F.2d 776, 780 (2d Cir. 1992) (internal quotation marks omitted) (quoting *Huddleston*, 485 U.S. at 689).  Significantly, the district court's role at this stage is "neither [to] weigh[] credibility nor make[] a finding that the [plaintiff] has proved the conditional fact" that the defendant committed the other act "by a preponderance of the evidence."  *Huddleston*, 485 U.S. at 690.  Defendants fail to establish that no reasonable jury could believe, by a preponderance of the evidence, the Non-Party Accusers' testimony regarding Weber's sexual misconduct toward them.  For example, Defendants point to the absence of photographic evidence from the relevant photoshoots corroborating the Non-Party Accusers'

testimony; certain rules, schedules, and physical features of locations where the photoshoots took place that may tend to undermine the Non-Party Accusers' testimony; warm communications between some of the accusers and Weber after the alleged incidents; and the absence of proof of negative effects, such as psychological disorders, that the Non-Party Accusers say they suffered as a result of their experiences with Weber.  *See* Defs.' Mem. 9-33.  But none of this evidence (or lack of evidence, as the case may be) is sufficiently conclusive, either as to the facts or as to the witnesses' credibility, to justify *ex ante* exclusion.

Relatedly, Defendants' contention that there is an "obvious trend within this Circuit" toward admitting other act evidence only when it is corroborated by either "undisputed video" or "proof of a conviction," *see* Defs.' Mem. 48-49 (emphasis omitted), is without merit.  Although such corroborating evidence can certainly help the proponent of Rule 404(b) evidence meet its burden under *Huddleston*, it is not required.  Indeed, in many recent cases, courts in this Circuit have admitted testimonial evidence under Rule 404(b) without video proof or proof of a conviction, and the Second Circuit regularly affirms such rulings.  *See, e.g.*, *United States v. Moye*, 793 F. App'x 19, 21-22 (2d Cir. 2019) (summary order); *United States v. Lasher*, 661 F. App'x 25, 28-29 (2d Cir. 2016) (summary order); *United States v. Gadsden*, 300 F. App'x 108, 110 (2d Cir. 2008) (summary order); *United States v. Lombardozzi*, 491 F.3d 61, 78-79 (2d Cir. 2007); *Montanez*,  2019 WL 4328872, at *4, 7, 9; *United States v. Graham*, No. 16-CR-786-2 (NSR), 2019 WL 2366724, at *7-8 (S.D.N.Y. May 31, 2019); *United States v. Canales*, 718 F. Supp. 2d 327, 328-29 (S.D.N.Y. 2010); *United States v. Nektalov*, 325 F. Supp. 2d 367, 372 (S.D.N.Y. 2004).

Next, Defendants contend that the Non-Party Accusers' testimony should be excluded in exchange for a stipulation that "if the jury finds that Weber used fraud or force on [Boyce] to

cause a commercial sex act, Weber will not argue he did not have that knowledge and intent at the time of the alleged recruitment or enticement."  Defs.' Mem. 37.  Boyce opposes this proposal.  *See* ECF No. 166 ("Pl.'s Opp'n"), at 9-10.  "[S]ound judicial discretion" does demand consideration of whether an available, alternative form of evidence has "substantially the same or greater probative value but a lower danger of unfair prejudice."  *Old Chief v. United States*, 519 U.S. 172, 182-83 (1997).  In general, however, the party with the burden of proof — here, Boyce — is "entitled to prove its case by evidence of its own choice" and, subject to a limited exception for certain criminal cases not relevant here, a defendant generally "may not stipulate . . . his way out of the full evidentiary force of the case."  *United States v. Cottman*, 116 F.3d 466, No. 96-1774, 1997 WL 340344, at *3 (2d Cir. June 20, 1997) (unpublished table decision) (quoting *Old Chief*, 519 U.S. at 653); *see United States v. Sampson*, No. 13-CR-269 (S-5) (DLI), 2015 WL 2066073, at *4 (E.D.N.Y. May 4, 2015).  Accordingly, Boyce is not required to accept the proposed stipulation as a substitute for the full "picture of the events relied upon."  *Old Chief*, 519 U.S. at 187 (internal quotation marks omitted).

Moreover, Defendants' proposed stipulation is not an adequate substitute because it would actually require Boyce to prove more than the TVPA requires.  *See* Pl.'s Opp'n 10.  That is because a defendant may be liable under the TVPA even if no commercial sex act occurred. As the Second Circuit has held, the TVPA "criminalizes certain means when they are 'used to cause' an act, and thus is concerned with the means and not with the result.  The result itself is not an element of the offense."  *United States v. Alvarez*, 601 F. App'x 16, 18 (2d Cir. 2015) (summary order); *cf. United States v. Corley*, 679 F. App'x 1, 5, 7 (2d Cir. 2017) (summary order) (holding, in connection with 18 U.S.C. § 1591, which includes the phrase "knowing . . . that the person has not attained the age of 18 years and *will be caused* to engage in a commercial

13

sex act," that "the plain meaning of the statute . . . requires only that the defendant 'know' that the victim 'will be caused' to engage in a commercial sex act; the statute does not require that an actual commercial sex act have occurred"); *accord United States v. Hornbuckle*, 784 F.3d 549, 553-54 (9th Cir. 2015); *United States v. Willoughby*, 742 F.3d 229, 241 (6th Cir. 2014), *overruled on other grounds by Johnson v. United States*, 576 U.S. 591 (2015); *United States v. Garcia-Gonzalez*, 714 F.3d 306, 312 (5th Cir. 2013).  Thus, Defendants' offer to stipulate to Weber's knowledge *only if* the jury finds that Weber used fraud or force to cause Boyce to engage in a commercial sex act is not an appropriate substitute for the Non-Party Accusers' testimony.

Finally, Defendants contend that because Weber photographed "tens of thousands" of male models over the course of his career and only a handful are proffered by Boyce, the Non-Party Accusers' testimony does not tend to establish a consistent *modus operandi*.  *See* Defs.' Mem. 34-36 (emphasis omitted).  Relatedly, Defendants also move to admit the testimony of three Anti-*Modus Operandi* Witnesses, who will allegedly testify that they "shot with Weber without any improper conduct."  *Id.* at 33-34.  That motion is denied, for the same reason that the Court is not persuaded by Defendants' argument that because some models conducted photoshoots with Weber without incident, the probative value of the Non-Party Accusers' testimony is undermined: It is well established that "[a] defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on specific occasions."  *United States v. Williams*, 205 F.3d 23, 34 (2d Cir. 2000) (quoting *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990)); *see also United States v. Mustafa*, 753 F. App'x 22, 38 (2d Cir. 2018) (summary order) ("[T]he Rules of Evidence and our precedent clearly prohibit 'good acts' evidence to demonstrate a defendant's propensity not to engage in charged crimes.").  In sum,

evidence that Weber engaged in a pattern of sexual misconduct against Boyce and the Non-Party Accusers is admissible to prove knowledge under Rule 404(b), whereas evidence that Weber did *not* engage in sexual misconduct against the Anti-*Modus Operandi* Witnesses is inadmissible propensity evidence.

## B.  Rule 415

Alternatively, the Court concludes that the testimony of Ardolf, Baldwin, Krueger, Madden, Ricketson, and Van Oijen is admissible under Rule 415.  That Rule, which was promulgated by Congress itself, provides that, "[i]n a civil case involving a claim for relief based on a party's alleged sexual assault or child molestation, the court may admit evidence that the party committed any other sexual assault or child molestation."  Fed. R. Evid. 415(a).  "Sexual assault" is defined (by Rule 413), in turn, to mean

> a crime under federal law or under state law . . . involving:
>
> (1) any conduct prohibited by 18 U.S.C. chapter 109A;
>
> (2) contact, without consent, between any part of the defendant's body — or an object — and another person's genitals or anus;
>
> (3) contact, without consent, between the defendant's genitals or anus and any part of another person's body;
>
> (4) deriving sexual pleasure or gratification from inflicting death, bodily injury, or physical pain on another person; or
>
> (5) an attempt or conspiracy to engage in conduct described in subparagraphs (1)-(4).

Fed. R. Evid. 413(d).  Significantly, evidence admitted under Rule 415 "may be considered on any matter to which it is relevant," Fed. R. Evid. 413(a); *see* Fed. R. Evid. 415(a), *including* the defendant's "propensity to commit the alleged acts," *United States v. Barnason*, 852 F. Supp. 2d 367, 374 (S.D.N.Y. 2012).  That is, like its companions, Rules 413 and 414, Rule 415 "reflects an exception in [cases involving] sex crimes to the common law practice of excluding propensity

evidence." *United States v. Spoor*, 904 F.3d 141, 154 (2d Cir. 2018).  In directly promulgating

these three Rules, Congress "considered knowledge that the defendant has committed [sex

crimes] on other occasions to be critical in assessing the relative plausibility of sexual assault

claims and accurately deciding cases that would otherwise become unresolvable swearing

matches." *United States v. Schaffer*, 851 F.3d 166, 178 (2d Cir. 2017) (cleaned up) (quoting

*United States v. Enjady*, 134 F.3d 1427, 1431 (10th Cir. 1998) (quoting, in turn, 140 Cong. Rec.

S12990-01, S12990 (daily ed. Sept. 20, 1994) (statement of Sen. Robert Dole)), *opinion*

*clarified,* No. 96-2285, 1998 WL 133994 (10th Cir. Mar. 25, 1998)).

The admissibility of the Non-Party Accusers' testimony under Rule 415 turns largely on

whether Boyce's claim for relief is "based on" Weber's alleged sexual assault within the

meaning of the Rule.  Fed. R. Evid. 415(a).  Although there is a relative dearth of precedent

addressing this inquiry, two distinct approaches have emerged.  First, the Wright & Miller

treatise endorses a categorical approach, which provides that a "court is confronted with a claim

'based on' a sexual offense only when the elements of that offense are also elements of the civil

claim itself." 23 Wright & Miller, Fed. Prac. & Proc. Evid. § 5403 (2d ed. 2021).  The

treatise reasons that "the 'based on' phrase is broad enough to possibly encompass other types of

civil claims" than claims "for injuries inflicted by a sexual assault or child molestation." *Id.*

"For example, suppose a diversity case for personal injuries arising out of an automobile

accident in which the complaint alleges that, at the time of the accident, the defendant-driver was

distracted because he was attempting to sexually assault a hitchhiker he had picked up.  Or

assume defendant's attention was diverted from the road because he was texting child

pornography.  Or imagine an action for defamation in publishing an accusation that the plaintiff,

a politician, had committed sexual assaults and the defense of truth is raised." *Id.*  (footnote

omitted).  To avoid the admission of other sexual assault evidence in such cases, the treatise

recommends applying Rule 415 only to those claims that require the plaintiff to prove that the

defendant committed sexual assault.  *Id.*  Defendants argue in favor of this approach.  *See* Defs.'

Mem. 45-46.

Under the alternative approach, a court considers whether an alleged sexual assault

constitutes a factual premise of the plaintiff's claim.  In *United States v. Foley*, 740 F.3d 1079

(7th Cir. 2014), the Seventh Circuit articulated the rationale for this fact-specific approach: "The

focus of the Federal Rules of Evidence is on facts, and the policy rationale for Rule 413 is that a

person who has engaged in the covered conduct is likely to engage in it again.  Rule 413 uses

statutory definitions to designate the covered conduct, but the focus is on the conduct itself rather

than how the charges have been drafted."  *Id.* at 1087.  *Foley* addressed Rule 413, but its

reasoning applies equally to Rule 415.  Additionally, district courts considering whether Rule

415 applies in a particular case have tended to adopt the fact-specific approach (although

sometimes without explicitly considering the categorical approach as an alternative).  *See, e.g.*,

*Barnason*, 852 F. Supp. 2d at 373 (holding that Rule 415 applied to claims under the Fair

Housing Act because "there [wa]s at least one instance where the evidentiary record

establishe[d] the conduct at issue to fall under Rule 413's definition of 'sexual assault'"); *Frank*

*v. County of Hudson*, 924 F. Supp. 620, 625 (D.N.J. 1996) ("Although . . . the ordinary sexual

harassment or discrimination case will not justify the admission of evidence of prior sexual

assaults, in this case plaintiffs have alleged assaultive behavior rather than mere verbal abuse or

discriminatory treatment.  Accordingly, evidence of prior similar assaultive behavior may fall

within the purview of [Federal Rule of Evidence] 415.").  Boyce argues in favor of the fact-

specific approach.  *See* Pl.'s Opp'n 14.

The Court agrees with the Seventh Circuit's analysis in *Foley* and concludes that the fact-specific approach is more faithful to Congress's intent in promulgating Rule 415.  Like the defendant in *Foley*, Defendants here offer no "persuasive authority or policy reason why the rule should be interpreted" using the categorical approach.  740 F.3d at 1087.  To the extent that the Wright & Miller treatise's preference for the categorical approach is rooted in the parade of horribles that could follow from a more fact-intensive approach, the remedy is not to disregard Congress's intent in enacting Rule 415, but to rely on Rule 403.  That is, the more attenuated the legal claims at issue are from sexual assault, the less relevant and more prejudicial the admission of other act evidence generally will be. Applying the fact-specific approach, Rule 415 plainly applies to Boyce's TVPA claim, which is premised on the allegation that Weber sexually assaulted him.  That is, Boyce alleges that Weber used Boyce's own hand to touch Boyce's genitals, thereby falling within Rule 413(d)(2)'s ambit, and also alleges that Weber touched his (Weber's) genitals with Boyce's hand (albeit through his pants), potentially also falling under Rule 413(d)(3).  *See* Compl. ¶¶ 42-45.  Sexually touching another person's genitals or causing another person to touch one's own genitals without consent is "a crime under federal law."  Fed. R. Evid. 413(d); *see* 18 U.S.C. § 2244(b) (abusive sexual contact).

Of course, only evidence of another "sexual assault" is admissible under Rule 415. Because Ardolf, Baldwin, Kochevar, Krueger, Madden, Ricketson, and Van Oijen are expected to testify that Weber touched their genitals with either his hand or their own hands, their testimony is evidence of sexual assault within the meaning of Rule 413(d)(2) and/or (3). Likewise, because Barbieri alleges that Weber tried to put his genitals in Weber's mouth, his testimony is evidence of attempted sexual assault within the meaning of Rule 413(d)(5).  By contrast, neither Hooper nor Janney alleges a sexual assault or attempted sexual assault, so their

testimony falls outside the scope of Rule 415.  In any event, the Court would also exclude their testimony on Rule 403 grounds for the reasons discussed above.  *Cf. Spoor*, 904 F.3d at 154-55 (noting that Rule 414 evidence is subject to Rule 403 balancing).  So too, the Court excludes the testimony of Barbieri and Kochevar in order to avoid needlessly cumulative presentation of evidence.  In short, Rule 415 (aided by Rule 403) leads to the same result as Rule 404(b): that Ardolf, Baldwin, Krueger, Madden, Ricketson, and Van Oijen may testify (subject to reevaluating the question of cumulativeness at trial).

## CONCLUSION

For the foregoing reasons, the Court holds that the testimony of Ardolf, Baldwin, Krueger, Madden, Ricketson, and Van Oijen is admissible under both Rule 404(b) and Rule 415. The Court excludes the remaining Non-Party Accusers' testimony either because it does not satisfy the requirements of Rules 404(b) or 415 or because its admission, in addition to the testimony of the other six witnesses, would constitute a needless presentation of cumulative evidence in violation of Rule 403.  The Court also excludes the testimony of the Anti-*Modus Operandi* Witnesses.  In light of the foregoing, the Court need not and does not address Boyce's additional, alternative theories of admissibility.  *See* Pl.'s Opp'n 4-9, 13-14.

The Court reserves judgment on the parties' remaining motions *in limine* and on the parties' requests to seal portions of their motion papers.  *See* ECF No. 145, 161, 171.

The Clerk of Court is directed to terminate ECF Nos. 142 and 143.

SO ORDERED.

Dated: July 7, 2021
        New York, New York

_____
JESSE M. FURMAN
United States District Judge